(No. 36501.—

Dolores V. McMeen *et al.*, Appellees, *vs.* Florence M. Whipple *et al.*, Appellants.

*Opinion filed November 30, 1961.*

Brian & Wilson, of Toulon, and R. K. Rainey, of Princeton, for appellants.

McNeilly & Olivero, of Peru, and Robert L. Burhans, of Peoria, for appellees.

Mr. Justice House delivered the opinion of the court:

This is an equitable action based upon fraud in the exchange of real estate. The defendants appeal from a decree

finding fraud and directing a cancellation of deeds. A freehold is involved.

Defendant Walter E. Whipple, on Sunday, November 24, 1957, initiated negotiations with Marie Pohren for an exchange of a Fulton County farm in the name of his wife Florence, for a residence in the village of Wyanet. (While legal title to the residence was vested in plaintiffs Dolores V. McMeen and her husband Bruce as joint tenants, Marie, mother of Dolores, had an equitable interest in the property.) Whipple was persistent. He contacted Mrs. Pohren practically every day following his original overture, until the exchange was made on December 2, saying that he must raise funds immediately to settle a Federal case.

The McMeens lived in a distant community and came to the Pohren home for Thanksgiving dinner. That afternoon they and the Pohrens picked Whipple up and drove to the farm 80 to 100 miles distant. During the trip there was some discussion as to values and terms, and Whipple offered to take the Wyanet house for $12,000 and convey the farm for $20,000.

The following day Whipple again called on Mrs. Pohren insisting that he could not wait and wanted an immediate closing. On the Monday following he called McMeen asking him and his wife to come down for a closing that night. In the meantime Mrs. Pohren delivered a release of an unrecorded mortgage on the dwelling and the abstract and title papers to Whipple. He arranged a meeting at his attorney's office in the neighboring village of Buda for Monday, December 2. That night the dwelling was conveyed to Mrs. Whipple, the farm was conveyed to Mrs. Pohren and the latter and her husband executed eight $1000 notes secured by a mortgage upon the farm to Mrs. Whipple.

Plaintiffs contend that they were induced to make the exchange by false representations of Whipple and were thereby defrauded. The alleged false statements were: that the farm had a market value of $20,000 when in fact such

value was less than $10,000; that Whipple represented he had $20,000 to $22,000 invested in the farm when in fact his investment was less than $10,000; that he misrepresented the amount of the landlord's share of crops; and that there was a means of access to the farm by a public highway or roadway, whereas there is none.

The defendants maintain that valuation statements were mere "puffing." They further say that plaintiffs inspected the farm, had the duty to ascertain the means of access, and that the doctrine of *caveat emptor* applies.

While there is some dispute, a fair reading of the record discloses the following facts. The parties arrived at the farm late in the afternoon on Thanksgiving day. They drove onto the land a few car lengths, reaching it from the north by driving down an adjacent owner's lane over a rickety bridge and through a gate. When asked if that was the only way in, Whipple told them that there was a public highway or roadway on the south side of the farm across the creek which ran through the land, and that they had used a short cut. The creek was impassable by automobile. The women stayed near the car and the men walked out onto the farm a short distance. The parties remained only a short time and plaintiffs' inspection was cursory because of impending darkness. They were never shown the public highway or road which Whipple indicated furnished access to the land from the south.

There is no public highway or public road adjacent to the subject land. In fact, there is neither proof of the location of the nearest public road nor the exact location of even a private road which would furnish access. The land in question was originally the northerly part of a farm owned by one Daniel Yeoman. It was separated from the remainder by deed dated December 10, 1927, to a predecessor in title, which deed was silent as to access. On the same day the remainder of the original farm was conveyed and that deed recited: "There shall be free ingress and egress

to the land adjoining on the north that was part of the Dan Yeoman Estate at the date of this deed, providing gates are kept closed."

The question presented at the outset is whether defendant Whipple's untrue representation that a public highway or road furnished access to the land constitutes fraud which would justify recission. Under the decisions a false representation of a material existing fact, made with the intention to deceive, either knowing it to be false or making it in culpable ignorance of its truth or falsity, which was believed and justifiably relied upon by the other party to his injury, is actionable. (See e.g. *Foster* v. *Oberreich,* 230 Ill. 525; *Johnston* v. *Shockey,* 335 Ill. 363; *Schwabacker* v. *Riddle,* 99 Ill. 343; *Miller* v. *John,* 208 Ill. 173.) The representation was false, since the only access was over the land of another with the burden of passing through and keeping gates closed. It involved a material fact. Its purpose was to misinform and deceive. It is not certain that Whipple knew the representation to be false since he testified that he had never seen the road. However, he had owned the land for two years and should have known that the statement was false. Plaintiffs suffered injury, since it is a matter of common knowledge that land without an outlet to a public way is less valuable. That the representation was believed and relied upon by plaintiffs is evidenced by the fact that they entered into the exchange without examining the premises until the day following such exchange.

The remaining problem is whether plaintiffs were justified in relying upon the statement without attempting to ascertain its truth. "In determining this question, the represenations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of such as he might have availed himself by the exercise of ordinary prudence." (*Dillman* v. *Nadlehoffer,* 119 Ill. 567, 577.) Here, plaintiffs had done business with Whipple before and

he had given them no reason to distrust him. Because of approaching darkness, they apparently did not have time to drive around to check for a public road. They lived a long distance from the farm and from each other. (See *Miller* v. *John,* 208 Ill. 173; *Barnes* v. *Barnett,* 188 Ill. App. 32.) Defendant Whipple was pressing for an early closing and succeeded in getting an exchange just four days later. Under such circumstances we are of the opinion that plaintiffs were justified in relying upon Whipple's word and that they were not negligent in failing to make a further independent investigation.

Defendants cite *Schmidt* v. *Landfield,* 20 Ill.2d 89, in support of their contention that plaintiffs were not justified in relying on the representation. It is of no help to them here but does illustrate the vast difference in circumstances with which the courts are confronted in applying a rule. Plaintiffs' nine years to get acquainted with the true facts in that case contrast sharply with the four-day period here.

The misrepresentation as to access alone amply justified the decree of the trial court. It does not necessarily follow that other representations or combinations of representations by defendant Whipple may not have been actionable. After owning the land over 14 months he claimed the value to have doubled from $10,000 to $20,000 without any explanation for the increase. The statement was attributed to him by several witnesses that he had $20,000 to $22,000 in the farm when in fact he had less than one half of that amount. When these representations are added to the misrepresentation as to access, the inevitable conclusion is reached that this was a deliberate attempt to overreach the plaintiffs.

We find no error, and accordingly the decree of the circuit court of Bureau County granting recission is affirmed in all respects.

*Decree affirmed.*