TONY C. CROWDER, Plaintiff-Appellee, v. BOB OBERLING ENTER-
PRISES, INC., Defendant-Appellant.—TONY C. CROWDER, Plaintiff-Ap-
pellee, v. BOB OBERLING ENTERPRISES, INC., Defendant (Fierge Auto
Parts Company, Defendant-Appellant).

Fourth District   Nos. 4—86—0143, 4—86—0144 cons.

Opinion filed October 9, 1986.

314

Richard P. O'Connell, Ltd., of Quincy, for appellant Bob Oberling Enterprises, Inc.

John F. Adams, of Quincy, for appellant Fierge Auto Parts Company.

Jerry L. Brennan, of Keefe, Gorman & Brennan, of Quincy, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

Plaintiff sued defendants Oberling and Fierge in the circuit court of Adams County for fraudulent misrepresentation. A bench trial was held, at the conclusion of which the court awarded plaintiff judgment in the amount of $5,540 in compensatory damages against defendants jointly and severally, $9,000 in punitive damages against defendants severally, and $10,497.40 in attorney fees against defendants jointly and severally. We affirm.

Defendants raise the following issues: (1) the trial court's finding of fraudulent misrepresentation is against the manifest weight of the evidence; (2) the trial court erred in not dismissing plaintiff's count alleging a violation of an implied warranty; (3) the award of compensatory damages was not supported by the evidence; and (4) plaintiff's

failure to allege wilfulness or wantonness in his pleadings precluded an award of punitive damages.

This suit has its genesis in the purchase by plaintiff of a used 1981 car from Oberling. On July 1, 1982, plaintiff purchased the car for $10,255, which included a trade-in allowance of $2,695. At the time of the purchase plaintiff neither knew nor was he told that the car once had been a salvage car, had been standing in brackish water over the engine, and had a bent frame. The only representation concerning the condition of the car made to plaintiff was that the car was a good used car. Plaintiff subsequently experienced major problems with the car after the warranty expired. He had to change the transmission twice, and stopped driving the car when the third transmission began going out; the car's paint cracked and peeled badly; electrical parts corroded, thereby affecting the electrical ignition in the starting of the car; and the carpets faded and pulled loose. During June of 1983 plaintiff received a letter from the Secretary of State's office informing him that the car had once been a salvage vehicle and requesting the return of a corrected title application. This suit followed shortly.

The car originally became a salvage vehicle in January of 1982 after its recovery by Firemen's Fund Insurance Company (Firemen's) following its theft and involvement in an accident. Firemen's treated the car as a total loss and transferred it to Salvage Disposal Company of Florida in Opa Locka (Sadisco) to be auctioned off. Fierge purchased the car from Sadisco for $4,000 on February 15, 1982, transported the car back to Illinois and obtained an Illinois salvage certificate. On March 30, 1982, Fierge assigned the certificate and the car to Rod Smith Chevrolet (Smith), an auto dealer in El Dorado, Kansas, for $5,000. On May 20, 1982, after repairing the body damage to the front end of the car, and obtaining a Kansas certificate of title, Smith resold the car with the Kansas title to Fierge for $7,800. The title did not include any designation of the car's salvage history. On May 28, 1982, Fierge transferred the car and Kansas title to Oberling for $8,000, who in turn sold the car to plaintiff.

■■■ A reviewing court will not disturb a trial court's finding of fraud unless against the manifest weight of the evidence. (*Halla v. Chicago Title & Trust Co.* (1952), 412 Ill. 39, 47, 104 N.E.2d 790, 795.) The trial court's finding that defendants' engaged in fraudulent misrepresentation in violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 262 *et seq.*) is not against the manifest weight of the evidence. The Act authorizes plaintiff to pursue a private cause of action for decep-

tive commercial conduct. (*M & W Gear Co. v. AW Dynamometer, Inc.* (1981), 97 Ill. App. 3d 904, 914, 424 N.E.2d 356, 365.) Under the Act, plaintiff must show (1) a deceptive act or practice, (2) an intent by defendants that he rely on the deception, and (3) the deception occurred in the course of conduct involving a trade or commerce. Ill. Rev. Stat. 1985, ch. 121½, par. 262(2).

The deceptive practice complained of consists of failing to inform plaintiff of the water and frame damage to, and the salvage history of, the car. Fierge insists that when he purchased the car from Sadisco he neither knew about the water damage nor about the bent frame. He contends that (1) the damage was not visible, (2) Sadisco did not inform him of the damage, and (3) the only damage noted in Sadisco's salvage report and noticeable to an observer was to the front and body of the car. Fierge also testified that he knew Firemen's treated the car as a total loss. Oberling insists that he neither knew of the damage nor did Fierge inform him of any damage when he purchased the car from Fierge.

Firemen's automobile damage appraiser, Edward Kemp, testified that he inspected the car approximately two weeks before Fierge's purchase from Sadisco, and could see the car was structurally out of line and had water in the oil and transmission fluid. There is no evidence tending to show that any of these conditions were changed after Kemp's inspection and prior to Fierge's purchase. Kemp's testimony, Fierge's more than 10 years' experience in the car salvage business, and his knowledge that the car was treated by Firemen's as a total loss, is sufficient to demonstrate that Fierge at least should have known that the car had major damage. Furthermore, Fierge's uncontradicted testimony is that when he sold the car to Oberling he told Oberling "the car had paint and body work," trade language intended to inform the buyer that "you need to look at the car and make your own judgments." This clearly put Oberling on notice to inspect the car. There is no evidence that he conducted any inspection. The evidence is sufficient to show that both Fierge's and Oberling's asserted ignorance respecting the car's physical damage can at best be described as culpable or reckless. A representation known to be false or made in culpable ignorance of its truth or falsity is fraudulent. (*McMeen v. Whipple* (1961), 23 Ill. 2d 352, 355, 178 N.E.2d 351, 353.) Fraud is considered to be deceptive conduct under the Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262(2)).

The evidence also demonstrates that Oberling and Fierge engaged in deceptive conduct by omitting to inform plaintiff of the car's salvage history. This court has on a prior occasion characterized the sal-

vage history of a car as a material fact. (See *Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 723, 473 N.E.2d 92, 95.) Under the Act the omission of any material fact is deceptive conduct. (Ill. Rev. Stat. 1985, ch. 121½, par. 262(2).) Fierge testified that he could not remember whether he informed Oberling of the car's salvage history. Oberling denies being informed and the trial court so found. The evidence nevertheless demonstrates that Oberling should have known of the car's salvage history. Oberling first denied having ever engaged in the scheme of title washing. However, after being confronted with evidence of five instances of title washes, he admitted having engaged in the practice. Oberling had every reason to ask Fierge whether the car was salvaged: Oberling was Fierge's uncle; he had been purchasing cars from Fierge for about 12 to 15 years; on the average he purchased 75 to 100 cars a year from Fierge, of which 60 or 70% had a salvage title. Oberling's attempt to hide behind a mask of ignorance merely illuminates his culpability, as is illustrated by the following exchange on cross-examination by plaintiff's counsel:

"Q. You didn't even ask him [Fierge] whether it [plaintiff's car] had been salvaged or not?

A. No.

Q. You didn't ask him whether it had been under water?

A. No, sir. It had a good Kansas title. That's all I cared about."

Oberling also highlighted the intention underlying the title-washing scheme when he testified "[i]t makes it easier to sell the car to the retail customer without explanation of the S.V. [salvage] designation." Fierge too testified that he knew of some instances in which titles had been washed and that he had probably engaged in the practice himself. The evidence clearly supports a finding that both Fierge and Oberling sought by way of silence or determined ignorance to conceal the salvage history from the plaintiff.

Our review thus far also supports the trial court's finding that both Oberling and Fierge intended for plaintiff to rely both on their fraudulent misrepresentation of the physical condition of the car and on their omission of any mention respecting the car's salvage history. Nor is there any question, and Oberling and Fierge do not assert otherwise, that the conduct at issue was in connection with a trade or commerce.

■■ ■ Oberling and Fierge also contend that the award of compensatory damages was not supported by the evidence and that plaintiff failed to mitigate his damages. The trial court is authorized to award actual damages or any other relief it deems proper. (Ill. Rev.

Stat. 1985, ch. 121½, par. 270a.) We find ample evidence in the record to support the trial court's award. The trial court used as the measure of damages the difference between the actual value of the car on the date plaintiff purchased it and the value the car would have had if its condition was as represented by Oberling. The represented value was $9,860, sale price less $395 over valuation by Oberling for the trade-in. According to the trial court, the actual value of the car after Smith made repairs was $4,320. The trial judge accepted plaintiff's witnesses' testimony to the effect that the car could not be economically repaired. In uncontradicted testimony, Kemp, and Dick Whicker, a self-employed mechanic with about 10 years' experience, testified that it was not feasible to repair the car because of the water damage. The trial court also relied on plaintiff's witnesses respecting the value of a salvage car. Roger Oldfield, a used-car sales manager with about 18 years' experience in selling used cars, testified that a salvage car loses "roughly 40 to 50 percent" in value if its salvage designation is known. Ken Garkie, an assistant vice-president and loan officer in an Illinois bank, testified substantially to the same effect. Oberling and Fierge did not present any evidence showing that plaintiff failed to mitigate damages and therefore have not met their burden of proof. See *Casey v. Baseden* (1986), 111 Ill. 2d 341, 347, 490 N.E.2d 4, 6.

We reject defendant's contention that plaintiff's failure to allege wilfulness or wantonness in his pleadings was fatal to his request for punitive damages. Oberling and Fierge did not object to the form or substance of the pleadings at trial and therefore waived this issue. (Ill. Rev. Stat. 1985, ch. 110, par. 2—612; *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 219, 492 N.E.2d 1292, 1295-96.) Moreover, evidence concerning Oberling's and Fierge's conduct was introduced on the issue, thereby waiving any objection that the issue was improperly raised in the pleadings. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 518, 377 N.E.2d 21, 24.) In addition, plaintiff's complaint reasonably informed Oberling and Fierge of the nature of his claim, thereby putting them on notice of the nature of his complaint. See *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263, 1265-66.

Oberling's and Fierge's insistence that punitive damages are not warranted on the evidence in the record is without merit. Our review of the record thus far illustrates clearly the egregious scheme of deceit and fraud perpetrated by Oberling and Fierge against plaintiff and against the public generally. Their false representations and omissions of material fact were made wantonly and by design. The trial

court acted wisely in recognizing this to be a proper case in which to award punitive damages in order to punish Oberling and Fierge and to deter others from similar conduct. See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188, 384 N.E.2d 353, 360.

Affirmed.

McCULLOUGH, P.J., and WEBBER, J., concur.