In re Alex TAPPER, Debtor.

PEOPLE OF the STATE OF ILLINOIS, ex rel. Roland W. BURRIS, Attorney General of Illinois, Plaintiff,

v.

Alex TAPPER, Defendant.

Bankruptcy No. 88 B 20239.
Avd. No. 89 A 0363.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 24, 1991.

**596**

James M. Gordon, Asst. Atty. Gen., Consumer Protection Div., Chicago, Ill., for plaintiff.

Jody B. Rosenbaum, Collins & Bargione, Chicago, Ill., for defendant.

## MEMORANDUM OPINION ON ATTORNEY GENERAL'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Neil F. Hartigan, Attorney General of the State of Illinois ("Attorney General", "Plaintiff"), on behalf of twenty consumers ("Consumers"), moved pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(7) for entry of summary judgment finding nondischargeability of debt adjudged by an Illinois Court to be due from Debtor Alex

---

1. The record before the court includes pleadings filed in this Adversary Proceeding, and a trial transcript of the entire State Court proceeding including oral ruling by the trial judge, but excluding final arguments. The accuracy of the transcript was stipulated to by counsel for Plaintiff and Debtor. Also provided by stipulation were copies of all exhibits admitted into evidence during the State Court proceeding. Furthermore, in accordance with Local Rule 12(*l*) of the Northern District of Illinois (adopted by the District Court as a Rule of this Bankruptcy

Tapper ("Debtor"). Having considered the argument of counsel and pleadings and materials filed, for reasons stated below the Plaintiff's Amended Motion is granted as to principal amounts entered in the State Court, but denied as to costs awarded by that Court.

After the Motion was filed, the Hon. Roland W. Burris took office as Attorney General of Illinois. Under Rule 25(d)(1), F.R.Civ.P. (Bankr.R. 7025), the new Attorney General is automatically substituted as a party in whose name the judgment for Plaintiff is entered.

### UNDISPUTED FACTS [1]

Debtor Alex Tapper ("Debtor") was the president, sole director, and sole shareholder of 1st City Builders, Inc. ("1st City"), a corporation which was involuntarily dissolved on December 1, 1986. Debtor was engaged in the business of advertising and selling to consumers home repair goods and services which included installation of siding, roofing, tuckpointing, laying floor tiles, remodeling kitchens, and building room additions.

The Illinois Attorney General sued Defendant and his company in the case of *People of the State of Illinois v. 1st City Builders Inc. and Alex Tapper*, No. 86 CH 5954, in the Circuit Court of Cook County, Illinois, Chancery Division ("State Court Action"). Plaintiff alleged that in the course of his business operations, both Debtor and his company had violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, ¶¶ 261 *et seq.* (the "Act"). Pursuant to Section 7 of the Act, Plaintiff sought to enjoin Debtor permanently from engaging in the home repair business, and

Court), Plaintiff filed a statement of material facts as to which he contends there is no genuine issue, which includes both the oral ruling of the trial judge and copy of the final Judgment entered by him. Debtor filed no response or opposing affidavits. Therefore, pursuant to Local District Rule 12(n), "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 12(n).

requested payment of restitution damages on behalf of twenty named "Consumers" under the Act (the "Consumers"), and civil penalties. Plaintiff alleged that Debtor had personally violated the Act in many ways including the following:

performing home improvement work which did not materially conform to specifications of the work contract; incompletely performing home improvement work; providing inferior or defective goods and materials; performing home remodeling work in an untimely manner; misrepresenting to consumers the starting or completion dates for work; refusing to replace inferior or defective goods and materials despite repeated requests by consumers; falsely representing that substandard or incomplete work would be corrected and completed when no such correction, replacement, or completion was intended to be made; falsely representing that the consumer could select the materials to be used; having work performed by subcontractors or persons not licensed or trained to do the work; performing work not in compliance with applicable building and fire codes; issuing service warranties without the intention of honoring them; and, falsely advertising to the public that Debtor would guarantee the work performed by 1st City.

On December 30, 1988, Debtor filed his petition for relief under Chapter 13 of the U.S. Bankruptcy Code Title 11 U.S.C. ("Code"). The matter was converted to a Chapter 7 case on January 3, 1989.

On April 17, 1989, Plaintiff filed the instant Adversary Complaint to determine nondischargeability of any debt owed to the Consumers and to the Attorney General ("Adversary Complaint"). On the same date, Plaintiff also filed his motion for relief from the automatic stay in order to pursue the State Court Action which was then on the eve of trial. This Court modified stay and allowed Plaintiff to proceed in the State Court Action.

From April 24 through May 1, 1990, a bench trial was held on Plaintiff's Complaint before Judge Richard L. Curry of the Circuit Court. Debtor was represented by counsel at all times during that trial. More than twenty-five witnesses testified, including the Consumers from whom restitution was sought. A transcript of the entire trial proceedings, and also documents and video showing Debtor's work that were admitted into evidence, were presented in support of the instant Motion through stipulation of counsel for Debtor and Plaintiff.

On May 22, 1990, Judge Curry entered his Final Judgment in the State Court Action permanently enjoining Debtor from engaging in the home repair business ("Judgment"). The Judgment also adjudged that Debtor owed a total of $269,683.75 in restitution damages in specified amounts due to the twenty named Consumers, in addition to $75,000 in civil penalties and $4,110 in costs due to the Attorney General. In issuing the Judgment, Judge Curry also made and entered oral findings of fact for the record. He found that the allegations of the Complaint had been proved; that Debtor knowingly misrepresented his qualifications, intentions to start and complete work, and his warranties of workmanship; and

— that Debtor had "employed gross misrepresentations to inflate his qualifications," and that "[t]hese intentional distortions of fact were intended to be relied upon and ... were indeed relied on...." by the Consumers;

— that the "modus operandi was the same, that is early promises, followed by early and quick receipt of earnest money, then delays in construction, faulty materials, shoddy work, more promises, more delays, and finally abandonment of the undertaking";

— that every one of the Consumers testified they had been "drawn to the [Debtor] by reason of his advertisement on TV, and in the newspapers";

— that the award of $75,000 in civil penalties was "justified on the express findings made by the Court that the methods and practices of [Debtor] made manifest by the evidence presented, established an intention to defraud; established a pattern and

practice of consumer misrepresentation ..."; and

— that although the court had ruled that the applicable burden on the State was proof by a preponderance of the evidence, "the evidence presented here goes well beyond that level, and clearly satisfied the more stringent clear and convincing standard.... [i]ndeed, the evidence satisfies a beyond a reasonable doubt standard".

On June 11; 1990, Debtor filed a Notice of Appeal to the Appellate Court of Illinois, First District ("Appeal"), which is currently pending.

Plaintiff then filed the instant Motion for Summary Judgment. Plaintiff argues that the total of $269,683.75 in restitution damages awarded to the Consumers by Judge Curry should be excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code, and that the $75,000 in civil penalties and $4,110 in costs awarded to the Attorney General should also be deemed nondischargeable under § 523(a)(7). Plaintiff argues that there are no issues of material fact as to whether those debts meet the elements of § 523 because the doctrine of collateral estoppel bars relitigation of factual issues already determined by Judge Curry in the State Court Action. Plaintiff also contends in the alternative that an independent review of the record shows that the Motion should be granted as a matter of law. Debtor argues that because an appeal is pending and because the elements and standards of proof under § 523(a) and those under the Illinois Consumer Fraud Act are significantly different, this Court is precluded from applying the doctrine of collateral estoppel or entering summary judgment.

Additional facts shown by the record before this Court are referred to in the discussion below.

## JURISDICTION

United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to the bankruptcy judges for the District. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such a referral pursuant to Local Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(a). A proceeding to determine the dischargeability of a debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) F.R.Civ.P. (Bankr.Rule 7056), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n,* 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its mo-

tions, and must identify those portions of the "pleadings, depositions ... and affidavits, if any" which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon mere allegations or denials in his pleading; rather, his response must demonstrate specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

Finally, when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## STANDING OF THE ATTORNEY GENERAL

█ The Attorney General has standing to maintain this Adversary proceeding as a representative of the Consumers under the doctrine of *parens patriae. See People of the State of New York v. Hemingway,* 39 B.R. 619, 622 (N.D.N.Y.1983) (in which the bankruptcy judge found that the New York Attorney General had standing to seek nondischargeability of a debt on behalf of six consumers under the doctrine of *parens patriae* ); *State of New York v. DeFelice,* 77 B.R. 376, 378–79 (Bankr.D.Conn.1987) (". . . public policy considerations favor the conclusion that the Attorney General has standing to maintain this proceeding on behalf of [Debtor's] consumer creditors"). Moreover, Section 7 of the Illinois Act explicitly provides that the Attorney General "may bring an action in the name of the People of the State" in order to enjoin a person whose actions are unlawful under the Act.Ill.Rev.Stat. ch. 121½ ¶ 267. Section 7 also allows the State Court to award restitution damages in such an action, and allows the Attorney General to request and the Court to impose a civil penalty. *Id.* Because the Act authorizes the Attorney General to proceed on behalf of consumer fraud victims, to deny the Attorney General the right to prosecute here a complaint to determine the dischargeability of debts owed to such Consumers "would unduly hinder enforcement of the [Illinois] Consumer Fraud Act and would be contrary to legislative intent." *Fahner v. Smith,* 39 B.R. 690, 693 (Bankr.N.D.Ill.1984). Thus, the Illinois Attorney General has the right to continue to protect the Consumers by seeking a determination that the Judgment debts involved are not protected by the bankruptcy discharge.

## COLLATERAL ESTOPPEL UNDER § 523(A)(2)(A)

Plaintiff argues that there are no genuine issues of material fact as to whether the total of $269,683.75 awarded as restitution damages· to the Consumers meets the elements of § 523(a)(2)(A), because the doctrine of collateral estoppel bars relitigation of factual issues already determined by Judge Curry in the State Court Action. Collateral estoppel "relieves parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudications." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

In *Klingman v. Levinson,* 831 F.2d 1292, 1294–95 (7th Cir.1987), the Seventh Circuit addressed the application of collateral estoppel in context of an effort to bar a debt from discharge. *Klingman* analyzed nondischargeability of a debt under § 523(a)(4), for asserted defalcation while acting in a fiduciary capacity. In *Klingman,* the court observed that some courts, because of the bankruptcy courts' exclusive jurisdiction in determining dischargeability, give no collateral estoppel effect to state court proceedings. However, *Klingman* specifically rejected this position, stating that "[w]here a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments." *Id.* at

1295; *see also Cohen v. Bucci,* 905 F.2d 1111 (7th Cir.1990).

The *Klingman* court outlined four elements that must be met in order for the collateral estoppel doctrine to be applicable: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Klingman,* 831 F.2d at 1295.

■■■ In order to determine whether the elements of collateral estoppel have been satisfied in a dischargeability proceeding, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment. *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981) (in which the court remanded in order to allow the bankruptcy court to review the entire state court record and determine whether the issue of willful and malicious action had been actually litigated and was necessary to the state court decision). *See also U.S. Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 136 (N.D.Ill.1982) ("In the present case, in which the full state record ... was before the Bankruptcy Court, the Court properly used its discretion in applying collateral estoppel to this case"). Because Plaintiff and Debtor have stipulated to a certified transcript of the entire proceeding and all exhibits admitted in the State Court Action, excluding final arguments, this Court indeed has a full state court record before it. Accordingly, this Court may consider applying collateral estoppel and the doctrine of issue preclusion for purposes of determining nondischargeability of Debtor's debt.

■■■ To establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation; (2) at the time the representation was made the debtor either knew it was false or made it with such reckless disregard for the truth as to constitute willful misrepresentation; (3) the representation was made with the intent to deceive;

(4) the creditor reasonably relied on the representation; and, (5) the creditor suffered loss as a result of the misrepresentation. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *In re Kyriazes,* 38 B.R. 353, 354 (Bankr.N.D.Ill.1983). The elements of § 523(a)(2)(A) mirror the requirements for proof of common law fraud. *In re Kanak,* 85 B.R. 483, 488 (Bankr.N.D.Ill.1988).

■■■ Under the Illinois Consumer Fraud Act, a plaintiff must show: (1) a deceptive act or practice; (2) an intent by defendant that plaintiff rely on the deception; and, (3) that the deception occurred in the course of conduct involving a trade or commerce. *Crowder v. Bob Oberling Enter.,* 148 Ill.App.3d 313, 316, 101 Ill.Dec. 748, 750, 499 N.E.2d 115, 117 (4th Dist. 1986). Clearly a violation of the Act is not the same as the commission of common law fraud. *Kanak,* 85 B.R. at 487. Because a violation of the Act is considered simply a fraudulent act, the Act affords broader consumer protection than does the common law action of fraud. *See id.* Consequently, the Act's requirements for establishing a violation are far less stringent than those of § 523(a)(2)(A). If fraud is proven under § 523(a)(2)(A), then a violation would also exist under the Act; however, the converse is not true. *Id.* at 488.

If the State Court trial record were not before this Court, collateral estoppel could not be considered for purposes of determining dischargeability. However, examination of the State Court trial record present here reveals that the factual issues which were actually litigated in the State Court and which were essential to the judgment, were identical to the factual issues which need to be resolved in a nondischargeability determination under § 523(a)(2)(A).

In the Order, Judge Curry specifically found among other things that:

— Debtor had employed gross misrepresentations regarding his qualifications, and had intended those distortions to be relied upon.

— The Consumers had relied upon Debtors' misrepresentations and false assurances.

— Although the Consumers had informed Debtor of the faulty construction and materials, and Debtor had responded by promising to remedy the situation, Debtor abandoned each undertaking without fulfilling such promises.

— The award of $75,000 in civil penalties was justified because Debtor had intended to defraud the Consumers.

— The Consumers were entitled to restitution damages totalling $269,683.75.

Judge Curry's total findings establish that Debtor made false representations, that he did so knowingly and with the intent to defraud and deceive, that the Consumers actually and reasonably relied on the representations, and that the Consumers suffered pecuniary loss as a result of their reliance, thereby deserving restitution damages fixed in individual amounts totalling $289,683.75. Thus, the same facts required for a finding of nondischargeability under § 523(a)(2)(A) were found in the State Court Action. Because the factual issues which Plaintiff seeks to preclude here are the same as those decided in the State Court Action, the first element of collateral estoppel has been met.

Not only were the factual issues in the State Court Action identical to those before this Court, the factual issues were also actually litigated, and their determination was necessary to the State Court decision. The situation most clearly contemplated by the "actually litigated" standard is "the resolution of a dispute following a full trial on the merits." *In re Dvorak*, 118 B.R. 619, 624 (Bankr.N.D.Ill.1990). Clearly, the relevant factual issues were fully litigated on the merits in the State Court Action, as evidenced by the record and Judge Curry's findings. The trial record reveals that Plaintiff's counsel purposefully elicited lengthy and detailed testimony from the Consumers as to Debtor's knowledge and intent regarding his false representations, their reliance upon those misrepresentations, and their resulting damages. Debtor was fully represented by counsel before the State Court. Debtor's counsel had the usual opportunity to cross-examine the Consumers and develop any rebuttal testimony. Furthermore, Judge Curry's findings also reveal that his decision with regard to restitution costs and civil penalties rested directly upon the testimonial evidence concerning Debtor's knowledge and intent.

Thus, the State Court judge's determination of the several factual issues resolved was clearly necessary to the judgment he entered. *See generally Bishop v. Herwig*, 77 B.R. 662, 665 (Bankr.S.D.Ill.1987) (in which the court found that a state court judgment was entitled to collateral estoppel effect because the state court's findings with regard to a debtor's violations of the Illinois Consumer Fraud Act clearly established the requirements for nondischargeability of a debt under § 523(a)(2)(A)).

■ Debtor argues that even if Judge Curry's determination of factual issues in the State Court Action was essential to the judgment, such judgment was not final for collateral estoppel purposes. Specifically, Debtor contends that the pendency of his appeal suspends the operation of the Order as collateral estoppel. In this the Debtor is mistaken.

■ When a federal court considers applying the doctrine of collateral estoppel to a state court ruling, the federal court must apply the law of collateral estoppel of the particular state where the judgment was entered. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1983) ("... Congress has specifically required all federal courts to give preclusive effect to state court judgment whenever the courts of the State from which the judgment emerged would do so"). Under Illinois law, the pendency of an appeal does not suspend the collateral estoppel effect of a judgment.

In *Sixty-third & Halsted Realty Co. v. Goldblatt Bros., Inc.*, 342 Ill.App. 389, 96 N.E.2d 838, 843 (1st Dist.1951), the Illinois Appellate Court found that "[t]he law is clearly established that a judgment and

decree pending on appeal is res judicata.[2]" *Goldblatt,* citing *People ex rel. Arns v. Rickert,* 159 Ill. 496, 42 N.E. 884 (1986). *See also Village of Rosemont v. Lentin Lumber Co.,* 144 Ill.App.3d 651, 98 Ill.Dec. 470, 480, 494 N.E.2d 592, 602 (1st Dist. 1986) (in which the court upheld "the wisdom of the majority rule that an appeal from a judgment does not suspend the effect of the judgment as res judicata between the parties...."); 1B Moore's Fed. Prac. ¶ 0.416[3] at 524 (which includes Illinois in the "moderate majority [of states which] appear to follow the federal rule," which rule is that a "judgment should be accorded res judicata or collateral estoppel effect pending an appeal"). Thus, under Illinois law, Judge Curry's judgment is indeed final for collateral estoppel purposes despite the appeal therefrom. It therefore appears that all the elements of collateral estoppel have been demonstrated here.

■ However, Debtor asserts a final argument as to why he is not barred from relitigating the issues already determined by the State Court. He contends that the collateral estoppel doctrine is inapplicable because the Illinois Act requires a lesser standard of proof than does 11 U.S.C. § 523(a)(2)(A).

■ If in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to bankruptcy standards, then collateral estoppel will "bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). Collateral estoppel is foreclosed when there are disparate burdens of proof

in the state and bankruptcy forums. *Krenowsky v. Haining,* 119 B.R. 460, 464 (Bankr.D.Del.1990) ("[s]ince the burden of proof is higher than that required in state court proceedings, [creditor] cannot succeed on a collateral estoppel argument").

As noted by Judge Curry in his findings, the burden of proof for establishing a violation of the Illinois Act is mere preponderance of the evidence. While the standard of proof under 11 U.S.C. § 523(a)(2)(A) was until recently one of "clear and convincing evidence" in this Circuit, *see In re Bogstad,* 779 F.2d 370, 372 (7th Cir.1985), the U.S. Supreme Court held this month that preponderance of the evidence is the correct standard of proof for dischargeability exceptions under 11 U.S.C. § 523(a). *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).[3] Thus, Debtor's argument fails since the Act and a determination under Section 523(a)(2)(A) require the same standard of proof, that of preponderance of the evidence.

■ Furthermore, even if a determination under Section 523(a)(2)(A) did require proof by clear and convincing evidence, Judge Curry's findings would still be entitled to be given collateral estoppel effect. The trial record and remarks of the Court show that Judge Curry found the evidence supported by his findings by a clear and convincing standard. Specifically, Judge Curry found that the proof presented in the state court had gone "well beyond" the level of preponderance of the evidence, and had "clearly satisfied the more stringent clear and convincing standard." Indeed, he even found that the evidence had "satisfie[d] a beyond a reasonable doubt standard."[4]

2. Factors such as an appeal "generally affect the operation of a judgment as res judicata and its operation as collateral estoppel in the same way." 1B Moore's Fed.Prac. ¶ 0.416[1] at 513.

3. The Supreme Court in *Grogan* reasoned that the preponderance standard is presumed to be applicable in civil actions "unless particularly important individual interests or rights are at stake." *Id.* Since the Supreme Court previously has held that a debtor has no fundamental right to a discharge in bankruptcy, *see United States v. Kras,* 409 U.S. 434, 445–46, 93 S.Ct. 631, 637–38, 34 L.Ed.2d 626 (1973), it reasoned in the

context of provisions for nondischargeability of certain claims that a debtor does not have an interest in discharge sufficient to require a heightened standard of proof. *Id.* The Supreme Court also pointed out that neither Section 523 nor its legislative history prescribes any particular standard of proof, a statutory silence inconsistent with any view that Congress intended to require a clear and convincing evidence standard. *Id.*

4. The Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) stated that collateral estoppel is applicable if the

Because Judge Curry determined factual issues necessary to his case using at least the same standard of proof that this Court must apply here in determining nondischargeability under Section 523(a)(2)(A), the State Court's factual findings are given preclusive effect for purposes of determining dischargeability of the debts adjudicated in that case.

Debtor is therefore barred by the principle of collateral estoppel from relitigating the same issues here as those decided by Judge Curry. Consequently, in the absence of any genuine issue of material fact, Plaintiff's Motion for Summary Judgment with respect to nondischargeability of the $269,683.75 judgment amount, is to be granted as a matter of law under § 523(a)(2)(A). *See* Fed.R.Civ.P. 56(c); Bankr.R. 7056.

### INDEPENDENT REVIEW OF TRIAL RECORD UNDER § 523(a)(2)(A)

 Even if the determination in the State Court were not entitled to be given preclusive effect, this Court's independent review of the entire trial record and evidence admitted shows by a preponderance of the evidence, and indeed by clear and convincing evidence, that Debtor knowingly and wilfully made false representations with an intent to deceive the Consumers; that the Consumers actually and reasonably relied on the representations; and, that they suffered pecuniary loss as a result of their reliance. There are no genuine issues of material fact as to whether Debtor's liability to the Consumers, in the amount of $269,683.75, is nondischargeable pursuant to § 523(a)(2)(A).

First, the record shows that when Debtor made representations to the Consumers, Debtor either knew that such representations were false, or made them with such reckless disregard for the truth as to have constituted willful misrepresentation. Although Debtor advised each Consumer to the contrary, Debtor in fact knew that he did not employ his own tradesmen, but rather hired subcontractors; that he had not been in business as an expert contractor for the prior twenty or thirty years as represented, but rather was merely a salesman; and, that his real name was not "Al Romano," which is the name he used in his dealings with some of the Consumers.

Furthermore, the evidence shows that Debtor used the same modus operandi with each of the twenty Consumers, thereby establishing a consistent pattern or practice of fraudulent conduct. Debtor's method consisted of television or newspaper advertising, misrepresentations to individual Consumers as to his qualifications, and promises to do work in a professional and timely manner, followed by faulty work, promises to remedy the problems and failure to do so, and eventual abandonment of the project. Debtor's pattern of conduct itself shows that his false representations were made with a complete disregard for the truth, and thus constituted at the very least willful misrepresentation. Specifically, Debtor represented to each Consumer that he would provide quality work, and did not ever do so and knew that he could not do so. From the testimonial evidence against him and a video tape showing his work, it is evident that he lacked skilled workmanship. Almost all of his work was defective in some way, leaving dangerous construction, houses that could not be lived in, and inevitable need to employ legitimate contractors to correct what he did. He had no more skills in construction than a child with an Erector set. Moreover, Debtor repeatedly guaranteed his work, but repeatedly abandoned each project, leaving all faulty workmanship unrepaired. He al-

state court judge determined factual issues "using" the same burden of proof which the bankruptcy court would require. *Brown,* 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10. In other words, a bankruptcy court in a dischargeability proceeding must examine both the standard of proof required for the state court judgment and the proof "actually presented and recited in the state court judgment." *Crawford v. Dine,* 116

B.R. 101, 104 (Bankr.S.D.Ohio 1990). *See also Petruzzi v. DeLuca,* 111 B.R. 839, 841 (Bankr.C.D.Cal.1990) (in which the bankruptcy court noted that because review of the record showed that the trial court had found fraud by clear and convincing evidence, collateral estoppel was applicable for purposes of the dischargeability proceeding).

ways knew that his guarantees were phony.

Second, Debtor's misrepresentations were made with the intent to deceive. Questions of scienter are fact issues to be determined by the bankruptcy court. *Gabellini v. Rega*, 724 F.2d 579, 581 (7th Cir.1984). "[A]n intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another [to act accordingly]." *In re Kimzey*, 761 F.2d 421, 425 (7th Cir.1985). Debtor here knew or should have known that his misrepresentations would induce the Consumers to hire him, since in deciding whether to hire a contractor, a homeowner would naturally look to the contractor's qualifications; guarantees of work performed; assurances that the work would be completed in a satisfactory and timely manner; and whether the contractor and his crew were experienced for a reasonable length of time in the business together. Furthermore, Debtor's use of a fictitious name in order to escape the consequences of his misrepresentations shows that Debtor intended to deceive his customers. Finally, intent to deceive can also be inferred from the pattern of consumer misrepresentation engaged is by Debtor. Thus, Plaintiff has shown by preponderance of the evidence, and indeed by clear and convincing evidence, that Debtor knowingly made false representations, and did so with intent to deceive.

Third, on the basis of the record, it is apparent that the Consumers actually and reasonably relied on Debtor's misrepresentations. Each Consumer testified that he was drawn to Debtor solely as a result of Debtor's television and newspaper advertisements. Once Debtor met with the individual Consumers to discuss their home remodeling needs, each Consumer discussed at length Debtor's qualifications, the intended work, and costs, sometimes for a period of up to three hours. During these initial discussions, Debtor again used gross misrepresentations to inflate his qualifications.

Debtor invariably claimed to be an experienced contractor who employed his own skilled tradesmen. He displayed a book of clippings, photographs, and testimonials. Debtor guaranteed his work, promising to return to the project until the customer was satisfied. Debtor also explained that he could not be underbid because he was the owner of his own lumber supply company. Generally, Debtor addressed each concern of the Consumers and did so in a manner that assured them that he was the right man to do their remodeling work. Obviously the Consumers relied on his representations that he would remodel their homes in a skillful and most economical manner; otherwise, they would not have hired him. Furthermore, it was completely reasonable for the Consumers to have relied on those representations since a contractor's representations as to his experience and the quality and efficiency of his work, in addition to his bid amount, are a significant means by which a customer can decide whether to hire a contractor. Thus, the Consumers actually and reasonably relied on Debtor's misrepresentations.

Finally, each Consumer suffered a loss as a result of Debtor's misrepresentations. The evidence shows that the Consumers had to hire new contractors not only to finish the work which Debtor had left uncompleted, but also to repair the damages incurred by Debtor. Copies of invoices and estimates submitted by outside parties showed the extent of pecuniary loss which each Consumer suffered as a result of their reliance upon Debtor's misrepresentations. The amounts of restitution damages due each of the named Consumers totalled $289,683.75.

Debtor was unable to rebut any of the Consumers' assertions. As a result, this Court wholly concurs with Judge Curry's findings, and finds independently from the record that Plaintiff has demonstrated the following by a preponderance of the evidence, and indeed by clear and convincing evidence: That when he made the foregoing representations to Consumers, Debtor either knew the representations were false or made them with such reckless disregard for the truth as to constitute willful misrepresentation; that Debtor made the misrepresentations with intent to deceive;

that Consumers actually and reasonably relied on the misrepresentations; and that the twenty named Consumers each suffered losses as a result of the misrepresentations, totalling $289,683.75.

Debtor has submitted to this Court no rebuttal affidavits or other materials under Local District Rule 12(n) in this summary judgment proceeding. Thus, there being no issues of material fact, the Court finds the elements required for nondischargeability under § 523(a)(2)(A) to be satisfied as a matter of law.

### CONSIDERATION OF PENALTIES AND COSTS UNDER § 523(a)(7)

Under 11 U.S.C. § 523(a)(7), Plaintiff also seeks to except from discharge the $75,000 adjudged as civil penalty, and $4,110 in costs which the State Court ordered Debtor to pay to the Attorney General.

Section 523(a)(7) provides for nondischargeability of a debt which is a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...." 11 U.S.C. § 523(a)(7). The State Court ordered that $75,000 be paid by Debtor to the Attorney General as a civil penalty pursuant to Section 7 of the Act. Clearly a civil penalty to be paid to the Attorney General and authorized by statute constitutes a "penalty ... for the benefit of a governmental unit" under § 523(a)(7). Thus, the $75,000 award of civil penalty to the Attorney General is nondischargeable.

However, this Court cannot find the award of $4,110 in allowed costs to be nondischargeable. Although Section 10 of the Illinois Consumer Fraud Act provides that the Attorney General is entitled to recover costs for any action brought under its provisions, such costs do not constitute a "fine, penalty or forfeiture" within the meaning of 11 U.S.C. § 523(a)(7). Rather, the award of costs under a state consumer protection act is "simply a recognition by the state court ... that some additional compensation was required to make the prosecuting party whole again." *See State of New York v. Hemingway,* 39 B.R. 619, 621 (N.D.N.Y.1983) (in which that court found that an additional allowance granted

the Attorney General of New York pursuant to the state consumer protection statute was not excepted from discharge under § 523(a)(7)). Clearly the $4,110 awarded Plaintiff as costs was nothing more than "compensation for actual pecuniary loss" as that phrase is used in § 523(a)(7). Furthermore, as the *Hemingway* court noted, cases barring dischargeability under § 523(a)(7) generally involve criminal or tax-related penalties, and "not anything analogous to the award of costs in a civil proceeding." *Id.* Thus, the $4,110 in costs awarded Plaintiff under the Illinois Act is not nondischargeable under 11 U.S.C. § 523(a)(7).

### CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment is granted. The judgment amounts of $269,683.75 and $75,000 are nondischargeable pursuant to § 523(a)(2)(A) and § 523(a)(7), respectively. However, the award of $4,110 in costs is not nondischargeable under § 523(a)(7) as contended. A separate final judgment order to effect these rulings is entered this date.