KENNETH R. HOKE *et al.*, Plaintiffs-Appellees, v. MELVIN D. BECK *et al.*, Defendants-Appellants.

Third District   No. 3—91—0106

Opinion filed January 10, 1992.—Rehearing denied March 6, 1992.

Hartzell, Glidden, Tucker & Hartzell, of Carthage (Stanley L. Tucker, of counsel), for appellants.

Lucie & Carper, of Macomb (Jim D. Lucie, of counsel), for appellees.

JUSTICE HAASE delivered the opinion of the court:

The plaintiffs, Kenneth and Annetta Hoke, brought this action against the defendants, Melvin and Carol Beck, for damages because of defects in a house sold to them by the defendants. The third amended complaint set out two counts. The first alleged that the defendants failed to disclose defective conditions of the house in violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). The second alleged that the defendants had breached a warranty of habitability implied in the sale of the house. Following a bench trial, the trial court entered judgment for the plaintiffs on both counts, awarding them $7,600 in damages and $6,017.30 in attorney fees. Thereafter, the court denied the defendants' post-trial motion. The defendants appeal.

Count I of the plaintiffs' complaint alleged that the defendants, as builder-vendors for the purposes of the Consumer Fraud Act, knew or should have known of the following defects and failed to disclose them: (1) that pipes to the master shower leaked, causing damage to the wall, baseboard and floor; (2) that the window trim was improperly installed; (3) that a severe moisture problem existed under the house causing odor and damage to the floor and foundation; (4) that the garage was not completely insulated as stated by the defendants; (5) that two electrical outlets did not work; (6) that overhang was rotten and a section of siding was undone; (7) that the plumbing was improperly installed, causing a continuous sewer gas smell; (8) that the furnace was improperly installed in numerous ways; (9) that shingles on the roof were not properly affixed; (10) that the crawl space was improperly installed; (11) that joist braces were not installed; (12) that the garage door headers were not properly built; (13) that the utility room roof and floor were not level; and (14) that vents were not securely fastened.

Count II of the plaintiffs' complaint alleged that the defendants, as builder-vendors of a commercial nature, breached the implied warranty of habitability as a result of the above-described defects.

Melvin Beck testified that he was not a construction contractor and had never built a house by himself, but he did have a hand in the construction of several houses. From 1969 through 1982, he had five homes built. He and his wife lived in each of them for about two years before selling them. The first house was built in 1969 and sold in 1971. At the time the first house was sold, construction on a second house had begun. The Becks lived in the second house until they had a third house built next door in 1973. The Becks sold the third house in late 1976 or early 1977. The Becks then had a fourth house constructed adjacent to the two previous new homes. The Becks sold the fourth house in 1979. In November of 1981, construction was begun on the Becks' fifth house, which is the subject of this lawsuit.

Melvin stated that he performed various tasks in the construction of the homes such as carpentry work, painting and clean up work, common labor, and installation of the plumbing and furnace. He noted that he did not have any written contracts with the carpenters, but paid them on an hourly basis. He also stated that his wife kept the financial books and they both paid the bills for the supplies and materials.

Regarding the house in question, Melvin testified that the house was located across the street from his mother's house and he did not intend to sell it. He only decided to sell it after suffering a significant financial reversal. He worked on the crawl space, installed the plumbing and heating systems, and helped with the carpentry work. He knew there was a moisture problem in the crawl space area when the house was constructed. According to Melvin, he told the Hokes that he had fixed the water problem, but if it was not fixed, they would have to pump it out with a new sump pump he would give them. Melvin further stated that he had told the Hokes that the garage was insulated and that the best of everything was used in the house.

The Becks' tax returns introduced into evidence indicated that they filed a schedule D form and a 2119 form with the IRS only in 1978. A 2119 form is apparently required for the sale of a personal residence.

Tom Leach, an engineer and licensed plumber, testified that he examined the plaintiffs' furnace on February 12, 1986. In so doing, he smelled carbon monoxide fumes and observed numerous problems with the way the furnace was installed. He called the gas company and had the gas shut off. He advised the Hokes to vacate the prem-

ises. Leach further testified that the plumbing system violated several State plumbing laws.

Herb Bozard, a carpenter-builder, testified that various portions of the house did not meet general industry standards. He noted that the use of Visqueen and limestone rock in the crawl space was improper and created additional water problems.

Annetta Hoke testified that Carol Beck approached her regarding the purchase of the house in question. One week later, Melvin Beck showed her the house and told her that he had installed the furnace and plumbing. He also told her that he had built other homes with the help of other people such as his son-in-law and Steve Coatsenberg. According to Annetta, Melvin further stated to her that he guaranteed that the crawl space would be dry and that the most water they would have would be a quart. Melvin also represented to her that the garage was insulated.

Kenneth Hoke testified that both of the Becks showed him the house on two occasions. During that time, Melvin told Kenneth and his wife that the house was the best quality and that it was the best house he had ever built. After they purchased the house, the Hokes noticed that an odor emanated from their crawl space. They eventually determined that the crawl space was very wet. Kenneth also testified regarding various other problems with the construction of the house.

The plaintiffs' attorney, Jim Lucie, testified that he worked 71.6 hours at $75 per hour, which was a reasonable rate in the area. He introduced into evidence an itemized bill showing dates and times that he rendered services for the plaintiffs.

At the outset, the defendants argue on appeal that the trial court improperly found defendant Carol Beck liable.

■ We agree. There was no evidence establishing that Carol was a builder-vendor or that she made any misrepresentations in violation of the Consumer Fraud Act. In our opinion, Carol Beck had an ownership interest in the property but was not a builder-vendor either for purposes of the warranty of habitability or for the purposes of the Consumer Fraud Act. Accordingly, we reverse the court's judgment pertaining to Carol.

Defendant Melvin Beck next argues that he was not a builder-vendor for the purposes of the implied warranty of habitability. He asserts that he was not a builder-vendor because he did not intend to sell the house in question and that his course of conduct in having other homes built over the years was very attenuated.

The warranty of habitability is a creature of public policy to protect purchasers of new houses when latent defects are discovered. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.) The supreme court in *Petersen* noted that the primary reason for the warranty is "because of the unusual dependent relationship of the vendee to the vendor." (*Petersen* (1979), 76 Ill. 2d 31, 41, 389 N.E.2d 1154, 1158.) In many cases, the purchase of a home is the most important investment of a lifetime and it would be unjust to apply the rule of *caveat emptor* to an inexperienced home buyer in favor of a builder who is in the business of building and selling homes. (*Hefler v. Wright* (1984), 121 Ill. App. 3d 739, 460 N.E.2d 118.) Such a vendee is usually not knowledgeable in construction practices and, to a substantial degree, must rely upon the integrity and skill of the builder-vendor. (*Petersen*, 76 Ill. 2d 31, 389 N.E.2d 1154.) In defining the scope of the warranty, it has been found that the house must be reasonably suited for its intended use and not simply habitable. *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.

Since *Petersen*, the warranty of habitability has been applied in a broad fashion to protect home buyers. In *Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651, the Illinois Supreme Court defined a builder-vendor as one who is engaged in the business of building, so that the sale is of a commercial nature, rather than a casual personal one. The court noted, however, that the "commercial" requirement does not demand that the builder-vendor have a long and extensive experience in the construction industry. Liability was found to exist in *Park* despite the defendant's arguments that the dwelling was only the second one he had constructed and that the house was not "new" because he had lived in it for a short time.

■ Applying the principles of the above-mentioned cases, we reject Melvin's argument that the trial court erred in finding that he was a builder-vendor. Whether a defendant is a builder-vendor for the purposes of the warranty is a question of fact to be determined on a case-to-case basis. (See *Park v. Sohn* (1982), 89 Ill. 2d 453, 433 N.E.2d 651.) Here, the trial court had before it sufficient evidence from which it could conclude that the sale was of a commercial nature. The record shows that Melvin built five homes in a 13-year period. In so doing, he operated as a general contractor subcontracting for much of the work. He paid the subcontractors on an hourly basis. As time progressed, he personally did more and more of the work on the homes himself. Moreover, he did not claim the sale of any of the five homes as the sale of a personal residence for Federal income tax purposes. While this set of facts does not necessarily man-

date a finding that Melvin was a builder-vendor, the trial court here specifically found that he was operating a business for profit in his sale of the homes. We are unable to say that the court's determination was erroneous.

Melvin claimed that he did not initially intend to sell the house. The trial court, however, as the judge of the credibility of the witnesses, was not obligated to accept his contention. Under the circumstances, the court could properly conclude that the sale was of a commercial nature rather than a strictly personal and casual one.

Having determined that Melvin was a builder-vendor for the purposes of the implied warranty of habitability, we now turn to Melvin's contention regarding count I of the plaintiff's complaint, which alleged a violation of the Consumer Fraud Act. He argues that the trial court's determination that he made misrepresentations in the sale of the house was against the manifest weight of the evidence because the defects were unknown to him.

We disagree. We note that the Consumer Fraud Act should be liberally construed to effect its purposes. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.) Under the Act, the plaintiff must show: (1) a deceptive act or practice; (2) an intent by the defendant that he rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce. (Ill. Rev. Stat. 1989, ch. 121½, par. 262.) The "intent" required by the statute is only the intent that the plaintiff in the primary action rely on the information that the defendant gave him, as opposed to any intent on the defendant's part to deceive. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.* (1990), 197 Ill. App. 3d 948, 557 N.E.2d 246.

■ Here, we find that the evidence was sufficient to show that Melvin violated the Act. Melvin clearly misrepresented the amount of water that would be in the crawl space and whether the garage was fully insulated. The plaintiff was not required to show by direct proof that Melvin knew that these representations were false. The defendant's knowledge of the falsity could be inferred from the circumstantial evidence. Moreover, we note that a representation made in culpable ignorance of its truth or falsity is fraudulent for the purposes of the Act. *Crowder v. Bob Oberling Enterprises, Inc.* (1986), 148 Ill. App. 3d 313, 499 N.E.2d 115.

Melvin next argues that the trial court's judgment should be reversed because the plaintiffs were required to prove their cause of action under the Act by clear and convincing evidence.

Melvin concedes that the courts appear to have assumed that the standard of proof under the Act is a preponderance of the evidence and that the question of which standard of proof applies has not been raised before on appeal. We find it unnecessary, however, to reach the issue, since the record shows that the plaintiffs proved their cause of action by clear and convincing evidence.

Lastly, Melvin contends that the evidence was insufficient to support the trial court's award of attorney fees.

In *Kleidon v. Rizza Chevrolet, Inc.* (1988), 173 Ill. App. 3d 116, 527 N.E.2d 374, the court reversed a trial court's award of attorney fees and remanded the cause, directing that the trial court, before determining the proper award, consider the novelty and difficulty of the question involved, the experience and ability of the plaintiffs' counsel, the skill necessary to perform the legal services rendered, and the benefits resulting to the plaintiffs. In the case at bar, the record does not reveal that the trial court considered the factors set forth in *Kleidon*. Furthermore, it does not appear that the trial court made an attempt to apportion the award of attorney fees between the Consumer Fraud Act count in count I and the implied warranty of habitability count in count II. Under section 10a(c) of the Consumer Fraud Act (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c)), the court may award reasonable attorney fees to the prevailing party. However, the plaintiffs are not entitled to an award of attorney fees for the implied warranty of habitability. Accordingly, we vacate the attorney fees awarded and remand this cause for further proceedings consistent with *Kleidon* and also for the court to make an apportionment of the attorney fees between those which relate to the consumer fraud count and those which relate to the implied-warranty-of-habitability count.

The judgment of the circuit court of McDonough County pertaining to both the award of attorney fees and the liability of Carol Beck is reversed. The cause is remanded for further proceedings consistent with *Kleidon*. The remainder of the court's judgment is affirmed.

Affirmed in part; reversed in part and remanded with directions.

GORMAN and STOUDER, JJ., concur.