In re Joseph A. THOMPSON, Debtor.

Joseph A. THOMPSON,
Plaintiff–Appellee,

v.

COMMONWEALTH of Virginia,
Defendant–Appellant.

No. 93–1146.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 27, 1993.

Decided Feb. 1, 1994.

ARGUED: John Minh Tran, Assistant Commonwealth's Attorney, Alexandria, Virginia, for Appellant. Nils George Peterson, Jr., Arlington, Virginia, for Appellee. ON BRIEF: John E. Kloch, Commonwealth's Attorney, Alexandria, Virginia, for Appellant.

Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

OPINION

MURNAGHAN, Circuit Judge:

On September 22, 1988, the Debtor, Joseph A. Thompson, was convicted of a felony in the Circuit Court for the City of Alexandria. The Circuit Court sentenced the Debtor to confinement in the state penitentiary for a period of five years and further ordered the Debtor to pay the costs of prosecution. On December 13, 1991, the Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. The debtor was granted a discharge from his debts on March 25, 1992.

Subsequent to receiving his discharge, the Debtor filed a motion to reopen his estate to add unpaid court costs arising from his 1988 state criminal conviction as a debt to be discharged. On the ground that such a debt was non-dischargeable under the Bankruptcy Code, the Bankruptcy Court refused to reopen the case.

On December 28, 1992 the United States District Court for the Eastern District of Virginia, Alexandria Division, reversed the decision of the Bankruptcy Court. The District Court issued a written memorandum wherein it held that the Debtor's court costs were dischargeable in bankruptcy, and that it was an abuse of discretion for the Bankruptcy Court not to permit the Debtor to reopen

his case. The District Court issued an Order remanding the case to the Bankruptcy Court for proceedings consistent with its rulings.

The case never returned to Bankruptcy Court, but instead was appealed to the Fourth Circuit. The Commonwealth of Virginia seeks a reversal of the District Court's ruling, and a holding that costs arising out of a criminal conviction are not dischargeable in bankruptcy.[1]

The facts of this case are undisputed. Subsequent to receiving his discharge in Bankruptcy, the Debtor had realized that he remained liable for the unpaid court costs arising from his criminal conviction in 1988 and filed a motion to reopen his estate to include such court costs as a debt to be discharged. The Bankruptcy Court denied the Debtor's motion to reopen his case, on the ground that court costs are not dischargeable in bankruptcy. The District Court reversed and remanded, holding that such costs were dischargeable and that the Bankruptcy Court's decision not to reopen the case was an abuse of discretion.

## DISCUSSION

11 U.S.C. § 523(a)(7) provides that a discharge under section 727 does not discharge a debtor from any debt to the extent that debt:

(1) is for a fine, penalty or forfeiture;

(2) payable to and for the benefit of a governmental unit; and

(3) is not compensation for actual pecuniary loss.

The parties agree, as they must, that before a debt is considered nondischargeable under this section, the debt must meet all of the three requirements under § 523(a)(7) enumerated above. The parties disagree, however, as to the applicability of Section 523(a)(7) to court costs arising from a criminal conviction.

The debt that is the subject of the instant appeal is payable to the Commonwealth of Virginia, a government unit under the Bankruptcy Code. 11 U.S.C. § 101(27). Pursuant to the laws of Virginia, the Clerk of the Circuit Court, upon the conviction of a criminal defendant, dockets a claim against the defendant for the costs of prosecution. Va. Code.Ann. §§ 19.2–336, 340 (Michie 1990). Collection of the costs of prosecution can also be accomplished through the set-off of any tax refunds due the defendant from the Department of Taxation. Va.Code Ann. § 58.1–525 (Michie 1991).

Thompson contends that, since Virginia's statutory and decisional law repeatedly has defined assessed costs as non-penal, the costs do not meet the federal Bankruptcy Code's definition of nondischargeable debts. In other words, Thompson asserts that since the costs are not penalties for the purposes of Virginia Commonwealth law, they cannot constitute a claim that is "for a fine, penalty, or forfeiture" under § 523 of the Bankruptcy Code. Moreover, since the costs are assigned to the convicted defendant to *re-pay* the Commonwealth for the costs of its prosecution, the debt composed of the costs is "compensation for actual pecuniary loss" of the Commonwealth, and for that reason also may not be considered non-dischargeable in bankruptcy.

In *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court considered whether an order to pay restitution arising out of a criminal proceeding created a dischargeable debt. The Court concluded that restitution paid as a condition of probation was not dischargeable under Section 523(a)(7).

The Court grounded its decision in *Kelly* on its view of the relationship between state criminal and federal bankruptcy law. As the Court stated, "Our interpretation of the Code ... must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Id.* at 47, 107 S.Ct. at 360. The Supreme Court continued, observing that "[t]he right to formulate and enforce penal sanction is an important aspect of the sovereignty retained by

---

**1.** Ordinarily, a district court's remand to the bankruptcy court is not an appealable order, however, the case is properly before us since the only act left for the bankruptcy judge was ministerial.

the States.... This Court has emphasized repeatedly *'the fundamental policy against federal interference with state criminal prosecutions.'* *Id.* (citing *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)) (emphasis added).

The Supreme Court's analysis led it to conclude that "[Section] 523(a)(7) preserves from discharge any condition that a state court imposes as a part of a criminal sentence." *Id.* at 50, 91 S.Ct. at 753.

> On its face, [523(a)(7)] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures. Congress included two qualifying phrases; the fines must be both "to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss."

*Id.* at 51, 91 S.Ct. at 754.

The Commonwealth concedes that there is a line of Virginia cases defining as non-penal court costs arising from criminal conviction. In addition, Virginia Code Section 14.1–177 provides in pertinent part, "The laws of costs shall not be interpreted as penal laws[.]" Va.Code.Ann. § 14.1–177 (Michie 1993). The statutory scheme of costs in Virginia has been in existence for more than a century, and Virginia courts uniformly have accepted the meaning of the statute as literal. The font of this interpretation is the seminal case of *Anglea v. Commonwealth,* 51 Va. (10 Gratt.) 696 (1853), where the Virginia Supreme Court stated:

> It is demanded of him for a good and sufficient consideration, and constitutes an item of debt from him to the commonwealth. Payment of costs is no part of the sentence of the court, and constitutes no part of the penalty or punishment pre-

scribed for the offense. Indeed our statute expressly declares that the laws of costs shall not be interpreted as penal laws.... The right to enforce payment of them is a mere incident to the conviction, and thereby vested in the commonwealth for the sole purpose of replacing in the treasury the amount which the defendant himself has caused to be withdrawn from it.

*Id.* at 701.[2] In various contexts, the *Anglea* decision has been reaffirmed by Virginia cases. *Wicks v. Charlottesville,* 215 Va. 274, 208 S.E.2d 752 (1974); *Kincaid v. Commonwealth,* 200 Va. 341, 105 S.E.2d 846 (1958); *Commonwealth v. McCue's Executor,* 109 Va. 302, 63 S.E. 1066 (1909).[3] By way of example, in *Williams v. Commonwealth,* 5 Va. App. 514, 365 S.E.2d 340 (1988), the Virginia Court of Appeals considered the issue of whether defense counsel, in final argument to the jury, could address the potential liability for costs if the defendant were convicted. The Virginia trial court ruled defense counsel could refer to the potential fine but could not speak about the costs to be assessed if the jury convicted the defendant. The *Williams* Court held:

> The defendant's liability for court costs is irrelevant in the jury's determination of the defendant's guilt and punishment, and, therefore, should not be addressed or alluded to in final argument. "Payment of costs is no part of the sentence of the court and constitutes no part of the penalty or punishment prescribed for the offense."

*Id.* at 521, 365 S.E.2d 340 (citing *Anglea*).

Taken at face value, the Virginia statute and subsequent case law strongly suggest that not only are the assessed costs not "penal," but they also serve as "compensation for actual pecuniary loss." The dilemma,

---

**2.** Ironically, the result of the *Anglea* holding was that an individual who had been pardoned for his crime was not relieved of the duty to pay his court costs. The result urged by Thompson, in the instant case, would have the opposite effect.

**3.** One Virginia Circuit Court recently considered the identical issue raised by the instant appeal. There, the state circuit judge cited the cases mentioned above and determined that "There is no room for debate or discussion about the state of Virginia law. Court costs imposed in criminal

cases in Virginia's state courts are not fines or penalties; they are compensation for actual pecuniary loss. Therefore, discharge of these costs is not barred by 11 U.S.C. § 523(a)(7)." *Workman v. City of Roanoke,* 17 Va.Cir. 410 (1989). As discussed below, however, there *is* at least "room for debate or discussion" about whether or not costs should be dischargeable in bankruptcy. In any case, notwithstanding our respect for the decision of a state court, we cannot allow it to occasion a result at war with federal bankruptcy law.

therefore, is that Virginia state courts, largely acting in fields outside the bankruptcy context, have created, for Commonwealth of Virginia purposes, a definition of the assessed costs, which, if extended to federal bankruptcy, would allow a convicted criminal to discharge his court costs by declaring bankruptcy. Such a result seems at odds with the Supreme Court's *Kelly* decision, in which it "h[eld] that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Kelly*, 479 U.S. at 50, 107 S.Ct. at 361.[4]

While it is true that Virginia cases have held that for certain Commonwealth purposes the costs assessed are not part of the sentence, it is also plainly the case that the costs are only paid by those defendants who are convicted of the crime charged. The "debt" is not incurred absent conviction. As the Commonwealth's brief points out, the Virginia law that has developed with respect to the definition of court costs has done so almost exclusively outside the context of the federal Bankruptcy statutes. A review of some of the cases cited by Thompson shows that those cases which held that court costs were not penal in nature addressed issues completely different from the issue of the dischargeability of a debt in bankruptcy.

In *Anglea v. Commonwealth*, for example, the Supreme Court of Virginia had to decide whether a governor's pardon would also vacate the imposition of court costs. The Court held that a pardon was not the equivalent of a reversal of the prior judgment against the defendant, and that a defendant was no less a felon once pardoned of his offense than he was a felon upon his conviction. The Court held that costs, being separate and apart from the penalties imposed upon the defendant, were not vacated simply upon his pardon, and that once convicted, the defendant remained obligated to pay his costs, regardless of any pardons which he might later receive. *Anglea*, 51 Va. (10 Gratt.) at 702.

In *Commonwealth v. McCue's Executor*, 109 Va. 302, 63 S.E. 1066 (1909), the Supreme Court of Virginia, citing *Anglea* for its proposition that recovery of court costs was a matter of revenue, held that the authority to collect costs on behalf of the Commonwealth rests solely with the Commissioner of Revenue and not the Commonwealth's Attorney.[5]

In *Kincaid v. Commonwealth*, 200 Va. 341, 105 S.E.2d 846 (1958), the Virginia Supreme Court decided that although a defendant had the right to a jury trial, the imposition of costs to pay for the exercise of that right did not violate the constitutional rights of the defendant. The right of Virginia to recover the costs of prosecution from the defendant without violating the Constitution was also affirmed in *Wicks v. Charlottesville*, 215 Va. 274, 208 S.E.2d 752 (1974).

In none of the Virginia cases cited were the courts confronted with the task outlined in *Kelly* of balancing Congress' desire to afford relief to over-extended debtors, and the state's interest in prosecuting its criminal laws. Indeed, the latter is an interest that the framers of the Bankruptcy Code do seem to have shared. "The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension." H.Rep. No. 595, 95th Cong., 2nd Sess. 342, *reprinted in* 1978 U.S.Code Cong.

---

4. Subsequent to its *Kelly* decision, the Supreme Court considered the dischargeability of criminal costs restitution payments in a Chapter 13 bankruptcy proceeding. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Noting that a Chapter 13 proceeding had a broader discharge provision than did Chapter 7, the Court held that obligations of restitution could be discharged under Chapter 13. *Id.* at 560–564, 110 S.Ct. at 2132 & 2133. It is clear, however, that *Kelly*, and not *Davenport* controls the case before us. First, like the instant case, *Kelly* concerned discharge in Chapter 7. Second, in 1990, Congress passed the Criminal Victims Protection Act of

1990 which added a paragraph to the discharge provision of Section 1328(a) and created an exception from discharge, in Chapter 13 proceedings, for criminal restitution payments. 11 U.S.C. § 1328(a)(3). In so doing, Congress not only indicated its dissatisfaction with the *Davenport* decision, but also once again reaffirmed its commitment to *Kelly's* holding that federal bankruptcy law should not provide a haven for those convicted under the criminal law.

5. The *McCue* decision subsequently has been overruled by the Virginia legislature, which now allows the Commonwealth's Attorney to institute collection proceedings.

& Admin.News 5787, 6299 (legislative history to automatic stay provision).

Even if the costs associated with conviction can be considered penal for the purposes of § 532(a)(7), however, there is still the difficult question of whether or not the costs assessed against Thompson have been charged solely to recoup the cost of prosecution to the Commonwealth. In other words, are the costs, even if penal still "compensation for pecuniary loss?" If they are, then they are dischargeable under the Bankruptcy Code.

Even though repayment is unarguably one reason for assessing such costs, in operation, the manner in which the costs may be paid suggests that they should be understood more broadly than simply as repayment to the State.

■ The court costs owed to the Commonwealth under a criminal case bear little resemblance to what normally constitute costs or recovery for pecuniary loss in a civil case. Section 19.2–354(B) of the Virginia Code allows the trial court to establish a program which would allow those who are unable to pay their fines and costs to satisfy their obligation through the performance of community service. Va.Code Ann. § 19.2–354(B) (Michie 1990). Section 19.2–356 authorizes the court to place *as a condition of probation,* the payment of costs, and authorizes the court to require the defendant to be of uniform good behavior if payment of the fines and costs are deferred or made a condition of probation. Va.Code.Ann. § 19.2–356 (Michie 1990). All those terms and conditions suggest that the assessment of costs is understood by the Commonwealth as operating hand-in-hand with the penal and sentencing goals of the criminal justice system. The practical operation of the cost-assessment can only be understood in the penal context. Consequently, while for state law purposes these costs may be considered other than penal, for the purposes of the Bankruptcy Code the costs appear as a "condition a state criminal court imposes as part of a criminal sentence." *Kelly,* 479 U.S. at 50, 107 S.Ct. at 361. The *Kelly* decision thus mandates that

for purposes of federal bankruptcy law, costs imposed as the result of criminal conviction are non-dischargeable in bankruptcy.

Two other federal circuit courts have held that costs arising out of a criminal conviction are not dischargeable in bankruptcy. In *In re Zarzynski,* 771 F.2d 304 (7th Cir.1985), the Seventh Circuit considered a case concerning Wisconsin law. Like Virginia, Wisconsin had a statute that provided for the payment of the costs of prosecution by convicted defendants. The *Zarzynski* panel offered a pragmatic approach to the question presented:

> In our view what a county expends in a criminal prosecution in the fulfillment of its statutory police power responsibilities is not "an actual pecuniary loss" to the county. It is, of course, an expenditure by the government, part of the expense of governing, but the county did not undertake the expense expecting to create a debtor creditor relationship. In this case, the county did its duty to protect the public by convicting and punishing a law violator. There is no county pecuniary loss when the county functions as it should in the furtherance of its public responsibilities.

*Id.* at 306. The Seventh Circuit continued saying that, "[t]he costs can be viewed a part of the penalty even though it is a penalty measured by the extent of certain county expenditures for trial. . . . '[B]ankrupts who have violated laws passed for the public good cannot escape punishment by going into bankruptcy.'" *Id.* (citation omitted).[6]

The Sixth Circuit in *In re Hollis,* 810 F.2d 106 (6th Cir.1987), reversed the bankruptcy and district courts which had ruled that under Tennessee law costs could not be considered a part of the penalty, and were instead intended as compensation for pecuniary loss. *Id.* at 107. The Sixth Circuit concluded that the case was controlled by *Kelly,* decided in the same year, and reversed. *Id.* at 109 ("unequivocal holding in *Kelly* requires us to find that the criminal court's assessment of costs against appellee does not constitute a dischargeable debt").

---

**6.** It should be noted that *Zarzynski* was decided before *Kelly,* so the Seventh Circuit did not have the benefit of the Supreme Court's discussion when it reached its decision.

As in the instant case, the statute at issue in *Hollis* stated that costs "shall not be deemed part of the penalty imposed in a criminal case." Tenn.Code Ann. § 40–24–105(b) (1982). Following *Kelly*, the *Hollis* Court noted that to be non-dischargeable under the provisions of § 523(a)(7) a debt must satisfy three requirements: 1) it must be for a fine, penalty, or forfeiture; 2) it must be payable to and for the benefit of a governmental unit; and 3) it must not be compensation for actual pecuniary loss. *Id.* at 108. As in the instant case, the *Hollis* Court determined that the issue was "whether [the debt] is a penal sanction or rather a pecuniary measure designed to compensate the State for the expense it had incurred in prosecuting the criminal action against appellee." *Id.*

Finding that the costs were assessed against the *Hollis* defendant as a condition of his probation, the Sixth Circuit had little difficulty in determining that the debt was a part of the penalty for the purposes of *Kelly*. The Court concluded that the Tennessee Code's provision stating that costs "shall not be deemed part of the penalty" was "displaced in this instance by the more specific provisions of [the section allowing costs to be assessed as part of probation]." *Id.*

The only difference between *Hollis* and the instant case is that here the costs were not assessed as part of the defendant's probation. *See also In re Garvin*, 84 B.R. 824 (Bankr.M.D.Fla.1988) (costs not dischargeable where probation was contingent upon payment of those costs). Indeed, the defendant was sent to jail. However, as mentioned above, Virginia does allow costs to be assessed as a condition of probation.

Even though Thompson's release or parole is not, on the facts of the case, contingent on the payment of the costs, Virginia's statutory scheme does, nevertheless, allow probation to be contingent on the payment of court costs. Since this Court is faced with a definitional determination of these costs for the purposes of federal law, that meaning, a general, statutory term, should not change with the specific circumstances of a given case. The fact that in some instances punishment will be contingent on court costs is sufficient, for definitional purposes, to lift Virginia's requirement that convicted defendants pay court costs into § 523(a)(7).[7]

Such a result has the added benefit of being consistent with the spirit of the Supreme Court's decision in *Kelly*. The *Kelly* Court was quite clear in holding that "*any* condition a state criminal court imposes as part of a criminal sentence" is not dischargeable in bankruptcy. *Kelly*, 479 U.S. at 50, 107 S.Ct. at 361. Since the Virginia Code contemplates parole that is contingent on the payment of costs and it is only the defendant who is convicted that must pay those costs, we find that for the purposes of federal bankruptcy law, the assessment is "part" of the sentence.

### CONCLUSION

Having determined that Thompson's court costs are nondischargeable, we must find that the District Court erred in determining that the Bankruptcy Court abused its discretion. The Fourth Circuit has determined that the issue of whether to permit a Debtor to reopen a case is a matter that rests upon the sound discretion of the court below, depending upon the circumstances of the case.

7. Research yields only two instances in which costs were determined to have been dischargeable in bankruptcy. *See In re Tapper*, 123 B.R. 594 (Bankr.N.D.Ill.1991). In *Tapper*, the bankruptcy judge determined that under Illinois law, the court costs assessed in a consumer action brought by the attorney general could not be considered penal, but were required to make the prosecuting party "whole again."

The critical difference between *Tapper* and the instant case, however, is that the costs in *Tapper* arose out of a *civil* proceeding. The *Tapper* court noted that "cases barring dischargeability under § 523(a)(7) generally involve criminal or tax-re-

lated penalties, and 'not anything analogous to the award of costs in a civil proceeding.'" *Id.* at 605.

Thompson relies heavily on a case decided by an Iowa state court in 1905. *See Olds v. Forrester*, 126 Iowa 456, 102 N.W. 419 (1905). In *Forrester*, the Iowa Supreme Court did hold that a judgment for costs in a criminal proceeding is dischargeable in bankruptcy. Apparently, the Iowa court contradicted the policies enunciated eighty years later by the United States Supreme Court in *Kelly*. Of course, the Supremacy Clause further compromises the precedential effect of the Iowa Court's decision.

*Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 (4th Cir.1984). Since the debt is non-dischargeable, there was no reason for the Bankruptcy Court to reopen the proceedings to determine whether or not the debt should be discharged.

The judgment of the district court is, accordingly,

*REVERSED.*