IN RE: Jacob Jerome MILAN and Ashley Kaye Milan (aka Ashley Kaye Hagen), Debtors.

County of Dakota, Plaintiff,

v.

Jacob Jerome Milan and Ashley Kaye Milan (aka Ashley Kaye Hagen), Defendants.[1]

BKY 14–34685–KAC
ADV 15–3034–KAC

United States Bankruptcy Court,
D. Minnesota.

Signed March 1, 2016

---

1. The Complaint (Doc. 1) in Count Three seeks a determination that charges for booking fees are nondischargeable and may be collected. Count Three was the only cause of action pleaded against Ashley Milan. Dakota County subsequently abandoned that count. *See* County of Dakota's Notice of Hearing and Motion for Summary Judgment, Pg. 2 (Doc. 12). Because Dakota County no longer seeks any relief with respect to Ashley Milan, the Complaint is dismissed as against Ashley Milan. In addition, the record supports no claim against her.

Jeffrey A. Timmerman, Dakota County Attorney's Office, Hastings, MN, for Plaintiff.

Kenneth Corey-Edstrom, Larkin Hoffman Daly & Lingren Ltd., Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

Katherine A. Constantine, United States Bankruptcy Judge

This case presents an issue of first impression in the District of Minnesota, whether costs charged to inmates under Minnesota's "pay to stay" program[2] are excepted from the bankruptcy discharge. It is presented on cross motions for summary judgment and based on undisputed material facts. Jeffrey Timmerman appeared for the plaintiff, the County of Dakota ("Dakota County"). Kenneth Corey-Edstrom appeared for the defendants, Jacob and Ashley Milan (the "Milans").

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070-1. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons discussed below, the obligations of Jacob Milan to Dakota County for "pay to stay" costs are dischargeable pursuant to 11 U.S.C. § 523(a)(7).[3] Judgment will be entered in favor of the Milans.

## FACTS[4]

The Dakota County Sheriff's Office ("DCSO") is a branch of Dakota County and operates the Dakota County Jail. Under the authority of Minn.Stat. § 641.12, subd.3, the DCSO charges convicted persons for incarceration expenses including room and board, medical expenses, and other miscellaneous costs through a "pay to stay" program.

The "pay to stay" policy's statement of purpose provides, "The pay [to] stay policy is designed to assist Dakota County RECOUP A PORTION of the costs of the offender's room and board, clothing and other correctional services" (emphasis in original). This statement is also contained in the Dakota County Sheriff's Office Correctional Facility Policy and Procedure.[5]

As of July 2015, the DCSO charged room and board "costs" of $25.00 per day. This rate is set by the Dakota County Board of Commissioners, which adopts a fee schedule proposed by the DCSO. Dakota County only attempts to recoup a portion of their costs through the room and board per diem. The actual cost currently exceeds $100.00 per day per inmate.

---

**2.** Both parties refer to costs of incarceration imposed under Minn.Stat. § 641.12 subd. 3 as "pay to stay" costs which are charged through a "pay to stay" program. *See* Joint Statement of Undisputed Facts (Doc. 11).

**3.** Accordingly, it is unnecessary to address the alternative arguments of the Milans based on Minn.Stat. §§ 541.05 and 541.07.

**4.** The material facts in this case are stipulated and set forth below, or are otherwise undisputed based on the record as and where noted. *See* Joint Statement of Undisputed Facts (Doc. 11).

**5.** *See* Pg. 104 of 132 (Doc. 10–1) (Dakota County Sheriff's Office Correctional Facility Policy and Procedure).

"Pay to stay" fees are administered by the DCSO. The DCSO does not administer court ordered costs, such as fines, surcharges, court costs, assessment fees, and restitution. Collection of court ordered costs are administered by the district court collector. The district court collector does not administer pay to stay charges. "Pay to stay" fees collected by the DCSO, or on its behalf, are deposited in a DCSO budgetary account for use in covering the cost of the inmate's stay while in custody. The court ordered costs are not deposited in the DCSO budgetary account, except for restitution for damages to property of the Dakota County Jail.

If an inmate of Dakota County fails to pay a "pay to stay" charge imposed by Minn.Stat. § 641.12, the consequence imposed by Dakota County is referral to Minnesota's "revenue recapture" program.[6] Revenue Recapture diverts tax refunds, rent credits, and lottery winnings to Minnesota governmental agencies to satisfy the inmate's "pay to stay" debt.[7]

As a result of criminal convictions, Jacob Milan was incarcerated a total of 179 days between January 2006 and November 2012. To recover a portion of its expenses incurred for housing Jacob Milan, the DCSO billed Jacob Milan $3,583.00 for room and board and $22.43 for medical expenses pursuant to the "pay to stay" statute.

The Milans filed a Chapter 7 bankruptcy petition on November 25, 2014. A discharge under 11 U.S.C. § 727 was granted to the Milans on February 18, 2015. In Schedule F of their bankruptcy petition, the Milans described Dakota County's claims as unsecured nonpriority claims and as "Various Dates Pay to Stay & Booking Fee" ($3,649.46), and "March 2013 Booking Fee" ($25.00). The parties now agree that as of the bankruptcy petition date, $3,504.77 in room and board charges and $9.69 in medical expenses (collectively, the "Incarceration Costs") remained outstanding.

Dakota County commenced this adversary proceeding seeking a determination that the Incarceration Costs are nondischargeable pursuant to 11 U.S.C. § 523(a)(7) and that Dakota County may continue its collection attempts. Prior to this proceeding, Dakota County did not assert that it considered the Incarceration Costs a part of Jacob Milan's "punishment."[8]

None of the court orders entered against Jacob Milan (the "Sentencing Orders") include any reference to room and board or medical costs.[9] But for his court imposed criminal sentence, the DCSO would not have charged him for these costs. Dakota County is not aware of any instance in which the Minnesota First Judicial District Court for Dakota County included "pay to stay" room and board or medical costs in a court order.

## DISCUSSION

"Bankruptcy Rule 7056, applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate 'if

---

6. *See* Pgs. 33–37 of 132 (Doc. 10–1) (Rolloff Deposition); Pgs. 99–101 of 132 (Doc. 10–1) (Letters to Jacob Milan from the DCSO); Pg. 106 of 132 (Doc. 10–1) (Dakota County Sheriff's Office Correctional Facility Policy and Procedure).

7. *See* Pgs. 33–37 of 132 (Doc. 10–1) (Rolloff Deposition); Pgs. 99–101 of 132 (Doc. 10–1) (Letters to Jacob Milan from the DCSO).

8. Joint Statement of Undisputed Material Facts, Pg. 4, paragraph 12 (Doc. 11).

9. *Id.*; *See* Pgs. 92–98 of 132 (Doc. 10–1) (Sentencing Orders).

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.' Once the moving party has met this burden, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion." *In re Juergens*, No. 12–21841–DRD, 2014 WL 978156, at *1 (Bankr.W.D.Mo. Mar. 11, 2014) *citing Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Juergens*, 2014 WL 978156, at *1; *citing Freyermuth v. Credit Bureau Serv., Inc.*, 248 F.3d 767, 770 (8th Cir.2001); Fed. R.Civ.P. 56(c). There is no issue as to any material fact in this proceeding. Accordingly, summary judgment is appropriate.

■ Section 727(b) of the Bankruptcy Code provides that a discharge in a Chapter 7 case discharges the debtor from all debts that arose before the case was filed, except the kinds of debts listed in § 523. 11 U.S.C. § 727(b). Section 523(a) provides exceptions to discharge. All but three are self-effectuating.[10] "Self-effectuating" means the applicable creditor need not take any action before the discharge is entered. *In re Petty*, 491 B.R. 554, 558

(8th Cir. B.A.P. 2013). "The[se] debts are excepted from discharge simply because of the nature of the debts." *Id*. Debts included in § 523(a)(7) are included in this category of automatically nondischargeable debts. *See Kelly v. Robinson*, 479 U.S. 36, 42, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *Petty*, 491 B.R. at 558. As a matter of first impression, Dakota County argues that "pay to stay" charges are nondischargeable debts pursuant to § 523(a)(7).

Section 523(a)(7) provides in relevant part "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt-to the extent such debt is for

[1] a fine, penalty, or forfeiture;

[2] payable to and for the benefit of a governmental unit; and

[3] is not compensation for actual pecuniary loss...." 11 U.S.C. § 523(a)(7).

■ The second prong is conceded and satisfied in this case; the Incarceration Costs are "payable to and for the benefit of a governmental unit," Dakota County.[11] The first and third prongs form the substance of the contest here. They should be reviewed mindful of the principle that "exceptions to discharge are to be construed narrowly. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Case*, 937 F.2d 1014, 1024 (5th Cir.1991). However, such construction should not permit the bankruptcy courts to become 'a haven for wrongdoers.' *In re Davis*, 194 F.3d 570, 573 (5th Cir. 1999)." *In re Hickman*, 260 F.3d 400, 404 (5th Cir.2001).

Minnesota's "pay to stay" statute[12] allows counties to assess incarceration expenses to inmates convicted of crimes:

10. "The three exceptions to discharge that are not self-effectuating are debts of a kind listed in §§ 523(a)(2), (4), or (6)." *In re Petty*, 491 B.R. 554, 558 (8th Cir. B.A.P. 2013).

11. Defendants' Reply to Plaintiff's Motion for Summary Judgment, Pg. 3 (Doc. 15).

12. The current version of Minn.Stat. § 641.12 became effective on August 1, 2010. The relevant subdivisions, dealing with room and

## Minn.Stat. 641.12 COLLECTION OF FEES AND BOARD BILLS.

**Subdivision 1. Fee.** A county board may require that each person who is booked for confinement at a county or regional jail, and not released upon completion of the booking process, pay a fee to the sheriff's department of the county in which the jail is located to cover costs incurred by the county in the booking of that person. The fee is payable immediately from any money then possessed by the person being booked, or any money deposited with the sheriff's department on the person's behalf. If the person has no funds at the time of booking or during the period of any incarceration, the sheriff shall notify the district court in the county where the charges related to the booking are pending, and shall request the assessment of the fee. Notwithstanding section *609.10* or *609.125,* upon notification from the sheriff, the district court must order the fee paid to the sheriff's department as part of any sentence or disposition imposed. If the person is not charged, is acquitted, or if the charges are dismissed, the sheriff shall return the fee to the person at the last known address listed in the booking records.

**Subd. 2. Board.** At the end of every month the sheriff of each county shall render to the county auditor a statement showing the name of each fugitive from justice, United States prisoner, one committed from another county or one committed by virtue of any city ordinance, the amount due the county for board of each and from whom, and also of all amounts due for board of prisoners for the preceding month.

**Subd. 3. Inmate payment of room and board.** (a) A county board may require that a person convicted of a crime and confined in the county jail, workhouse, or correctional or work farm pay the cost of the person's room, board, clothing, medical, dental, and other correctional services. The board shall establish a schedule to charge persons under this subdivision. The charges may be assessed for any time for which the person receives credit for time served against the sentence imposed as a result of the conviction. The costs may be collected at any time while the person is under sentence or after the sentence has been discharged. During the period of confinement, the costs may be deducted from any money possessed by the person or any money deposited with the local correctional or law enforcement agency on the person's behalf. The board, or local correctional agency or sheriff with authority over the jail, workhouse, or farm, may use any available civil means of debt collection in collecting costs under this subdivision.

(b) The chief executive officer of the local correctional agency or sheriff shall waive payment of the costs under this subdivision if the officer or sheriff determines that the person does not have the ability to pay the costs, payment of the costs would create undue hardship for the person or the person's immediate family, the prospects for payment are poor, or there are extenuating circumstances justifying waiver of the costs.

board costs (subd. 3), medical expenses (subd. 3), and booking fees (subdivision 1) have remained substantively unchanged since Jacob

Milan's first incarceration in January 2006. 2010 Minn. Laws Ch. 318 § 2.

If a person has been ordered by a court to pay restitution, the person shall be obligated to pay the restitution ordered before paying the costs under this subdivision. However, if the person is making reasonable payments to satisfy the restitution obligation, the local correctional agency or sheriff may also collect costs under this section.

**Subd. 4. Sentencing to service fees.** (a) A county board may require that an offender who participates in sentencing to service pay a fee.

(b) A county board may assess a fee to entities that receive direct benefit from sentencing to service work crews. Minn.Stat. § 641.12.[13]

*Kelly v. Robinson*

In *Kelly v. Robinson,* the Supreme Court reviewed whether a restitution debt payable to a state probation office as ordered by a state court judge as a condition of probation was dischargeable in a Chapter 7 case. *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). The Court held that § 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence" and determined that the restitution obligation was not dischargeable. *Id.* at 50, 107 S.Ct. 353.

Applying *Kelly,* the Fourth Circuit Court of Appeals found a civil judgment for disgorgement of ill-gotten profits nondischargeable under § 523(a)(7). *U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.,* 64 F.3d 920, 927–928 (4th Cir.1995). In another case, the Fourth Circuit found court ordered prosecution costs similarly nondischargeable. *Thompson v. Virginia*

*(In re Thompson),* 16 F.3d 576, 581 (4th Cir.1994). The Sixth Circuit found a criminal court's assessment of costs as a condition of probation nondischargeable. *In re Hollis,* 810 F.2d 106 (6th Cir.1987). The Eighth Circuit determined federal court ordered restitution costs nondischargeable in a criminal case. *U.S. v. Vetter,* 895 F.2d 456, 459 (8th Cir.1990).[14] In doing so, the Eighth Circuit referenced a Fifth Circuit case, which "extended the *Kelly* rationale to include federal restitution orders, even though the court recognized that *Kelly* 'was partially influenced by federalism concerns.'" *Vetter,* 895 F.2d at 459; *quoting United States v. Caddell,* 830 F.2d 36, 39 (5th Cir.1987).

The direction of these cases is clear: when a court imposes an obligation as part of a judicial order in a criminal case, the obligation is nondischargeable pursuant to § 523(a)(7). *See generally In re Lopez,* 579 Fed.Appx. 100 (3rd Cir. 2014). An obligation pursuant to a court order in a civil case can also be nondischargeable. *U.S. Dept. of Housing & Urban Development,* 64 F.3d at 927–928. Whether criminal or civil, all of these cases address an obligation imposed by a court order.

In contrast, in this case the Incarceration Costs are not included or referenced in the Sentencing Orders. It is the DCSO, not any court, that imposes room and board costs and medical expenses through the "pay to stay" program. As discussed more fully below, there is no nexus between Minnesota courts and the "pay to stay" program. Rather, the entirety of the record supports the conclusion that "pay to stay" operates wholly separate

---

**13.** Service fees are not at issue in this case.

**14.** There do not appear to be other Eighth Circuit cases addressing § 523(a)(7) other

than cases addressing its application to tax penalties.

from the judicial process. Moreover, discharging the Incarceration Costs will not interfere with state court criminal proceedings because the Incarceration Costs are not a part of state criminal court proceedings or its process.

In the *Kelly* case, the payment of restitution was included as a condition of probation by court order. While recognizing that the language of a statute is the starting point for review, the Court in *Kelly* required a review taking into account the historical deference of bankruptcy courts to such criminal judgments and the interests of the States. *Kelly,* 479 U.S. at 43–44, 107 S.Ct. 353. *Kelly* noted that "Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity." *Id.* at 47, 107 S.Ct. 353. The Court declined to hold that the Bankruptcy Code alters this judicial exception and supported its decision with reference to the basis for this exception, that is, "a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions.'" *Id.* at 47, 107 S.Ct. 353.

The Court in *Kelly* recognized a judicial exception to discharge which was not abrogated by the Bankruptcy Code. *See Id.* This exception, a "reflection of our federalism", is not relevant in this case. *Id.* at 49, 107 S.Ct. 353. The Incarceration Costs are not imposed by any court order and it

is undisputed that the Minnesota judiciary plays no role in the assessment of "pay to stay" charges imposed by Dakota County.

The *Kelly* Court also analyzed "two qualifying phrases" of § 523(a)(7) (identified above as the second and third "prongs") in light of this judicial exception and the differences between restitution and a traditional fine. *Id.* at 51, 107 S.Ct. 353. The Court concluded that restitution orders satisfy both of these qualifiers. *See Id.* at 52–53, 107 S.Ct. 353. The Incarceration Costs are not excepted from discharge under the judicial exception recognized by the Court in *Kelly.* However, as in *Kelly,* the Incarceration Costs will be excepted from discharge if all three prongs of § 523(a)(7) are satisfied. Whether the two prongs at issue in this case are satisfied is discussed below.

*The "pay to stay" costs are not fines, penalties, or forfeitures.*

In *Kelly* the Supreme Court stated the language of 523(a)(7) is "subject to interpretation." *Id.* at 50, 107 S.Ct. 353. The Supreme Court then stated, "[o]n its face, it creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures." *Id.* at 51, 107 S.Ct. 353. Numerous courts thereafter, including the Third, Fourth, and Fifth Circuits, have interpreted the phrase "fine, penalty, or forfeiture", and considered whether a charge is "penal," [15] or in the case of the Third Circuit, whether a debt needs to be penal to be nondischargeable. *In re Gi Nam,* 273 F.3d 281 (3rd Cir.2001).

The Fourth Circuit found prosecution costs nondischargeable by focusing on their character under bankruptcy law, regardless of Virginia law designating those obligations non-penal. *In re Thompson,*

---

**15.** For a thorough discussion on the divergent approaches to interpreting the meaning of fines, penalties, or forfeitures and following in

part its analysis here, *see In re Miller,* 511 B.R. 621 (Bankr.W.D.Mo.2014).

16 F.3d 576 (4th Cir.1994). The Fourth Circuit concluded that "[s]ince the Virginia Code contemplates parole that is contingent on the payment of costs and it is only the defendant who is convicted that must pay those costs, we find that for the purposes of federal bankruptcy law, the assessment is 'part' of the sentence" and therefore nondischargeable. *Id.* at 581.

Similarly, Dakota County argues that because only inmates convicted of a crime are assessed "pay to stay" costs, the Incarceration Costs are penal for purposes of bankruptcy law and therefore nondischargeable. However, the Virginia law at issue under the Fourth Circuit's analysis is materially different from Minn.Stat. § 641.12(3). The Virginia law authorizes Virginia courts to impose costs as a condition of probation. *Thompson* 16 F.3d at 580; *citing* Va.Code.Ann. § 19.2–356 (Michie 1990). The Virginia Code explicitly permits including costs in judicial orders. *Id.* The Virginia law operates "hand-in-hand with the penal and sentencing goals of the criminal justice system." *Thompson,* 16 F.3d at 580.

Although for state law purposes the prosecution costs may be non-penal, "for the purposes of the Bankruptcy Code the costs appear as a 'condition a state criminal court imposes as part of a criminal sentence' " and thus the Fourth Circuit determined they were nondischargeable. *Thompson,* 16 F.3d at 580; *quoting Kelly,* 479 U.S. at 50, 107 S.Ct. 353.

Minn.Stat. § 641.12(3) does not authorize or contemplate including "pay to stay" charges in judicial orders or criminal sentences. This distinction is particularly notable in light of Minn.Stat. § 641.12(1), which precedes § 641.12(3). Subdivision 1 requires an order of the district court for the assessment of a booking fee to be included "as part of any sentence or disposition imposed." Minn.Stat. § 641.12(1). Unlike the Virginia statute in the *Thompson* case, subdivision 1 of Minn.Stat. § 641.12 demonstrates that the Minnesota Legislature could have but chose not to provide an option .for courts to include "pay to stay" charges as part of a criminal order.[16]

The Fifth Circuit approached the issue differently in two cases reviewing bail bond debts. *See In re Soileau,* 488 F.3d 302 (5th Cir.2007); *In re Hickman,* 260 F.3d 400 (5th Cir.2001). In *Hickman,* the Fifth Circuit applied canons of construction after noting that the Supreme Court had previously found the phrase "fine, penalty, or forfeiture" ambiguous. *Hickman,* 260 F.3d at 403; *quoting Kelly,* 479 U.S. at 48, 107 S.Ct. 353. The Fifth Circuit interpreted fines, penalties, or forfeitures as Congress' synonymization for "takings grounded in wrongful acts and effectuating a punishment therefor." *Soileau,* 488 F.3d at 310–311; *see Miller* at 630.

The Fifth Circuit applied the *noscitur a sociis* doctrine[17] to interpret "fine, penalty, or forfeiture." *Hickman,* 260 F.3d at 403. The doctrine is "wisely applied when a word is capable of many meanings

---

**16.** Minn.Stat. § 641.12(1) also addresses the limitations on sentencing orders in Minnesota by affirmatively waiving them in allowing booking fees as part of a sentence; the relevant sentence commences with the phrase "[n]otwithstanding section 609.10 or 609.125." Minn.Stat. § 641.12(1). These sections, unlike § 641.12, are sentencing provisions in the Minnesota Criminal Code.

There is no such waiver for "pay to stay" costs and "pay to stay" costs are not available sentences under either Minn.Stat. §§ 609.10 or 609.125.

**17.** "[A] word is known by the company it keeps." *Hickman,* 260 F.3d at 403; *quoting Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

in order to avoid giving unintended breadth to the Acts of Congress." *Hickman*, 260 F.3d at 403; *quoting Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961). The Fifth Circuit concluded that because a penalty and fine are punitive or penal sanctions for wrongful acts, forfeitures must also be grounded in wrongful acts to satisfy the first prong of § 523(a)(7). *See Hickman* at 404–405. In *Hickman*, the Court reasoned "bail bond judgments are not a penal sanction rooted in the traditional responsibility of the state to protect its citizens, but rather arise from a contractual duty" and therefore were the type of obligation "typically discharged in bankruptcy." *Hickman*, 260 F.3d at 406. The Court echoed this in *Soileau*, stating a bail bondsman's debt is not the "result of any misconduct or wrongdoing by the bail bondsman." *Soileau*, 488 F.3d at 312. The bail bond debts were determined to be dischargeable in both cases because

they were not punishments for wrongful acts.[18]

■ As more fully discussed throughout this memorandum, the Incarceration Costs are not the result of a court order or judicial act, there is no nexus by statute or otherwise between the Incarceration Costs and the criminal justice system, and the stated purpose of the "pay to stay" statute is cost recoupment, not punishment. Accordingly, Dakota County did not demonstrate that the Incarceration Costs are "takings grounded in wrongful acts and effectuating a punishment therefor." *Soileau*, 488 F.3d at 310–311.

There are many approaches to determine whether a debt comes within the first prong.[19] It is settled, however, that a debt that is penal satisfies the first prong. It is also generally accepted that a debt is penal, for the purposes of § 523(a)(7), if it is included in a criminal court order or is part of the criminal process. A debt could also satisfy the first prong if it comes

---

18. *But see Gi Nam*, 273 F.3d at 287 (3rd Cir.2001) (declining to adopt other interpretations of *Kelly* "that the 'fine, penalty, or forfeiture' prong of § 523(a)(7) is restricted in scope to except from dischargeability only obligations of a penal nature.") *Gi Nam* does not affect the outcome in this case as the Incarceration Costs do not come within the plain meaning of "fine, penalty, or forfeiture" as analyzed by the Third Circuit. *Gi Nam* also noted the principles of federalism and comity raised by the *Kelly* Court and concluded that discharging bail bond debts could inflict problems upon the bail release system; that they "are 'central to our modern criminal procedure'; [and] any threat to their efficacy and integrity damages the States' criminal justice systems." *Id.* at 293–294. The record in this case does not support a determination that discharging "pay to stay" costs will threaten the criminal justice system in Minnesota.

19. Black's Law definitions are also frequently referenced in interpreting statutes. *See* Jeffrey L. Kirchmeier & Samuel A. Thumma,

*Scaling the Lexicon Fortress: The United States Supreme Court's Use of Dictionaries in the Twenty–First Century*, 94 Marq. L.Rev. 77 (2010). Many of the cases cited here or reviewed for this decision include references to Black's Law. The dictionary definitions of fine, penalty, and forfeiture are consistent with this court's interpretation of § 523(a)(7). The definition of "fine" in relevant part is "a pecuniary criminal punishment or civil penalty payable to the public treasury." Black's Law Dictionary, Seventh Edition, Pg. 647 (1999). The definition of "penalty" is "punishment imposed on a wrongdoer, especially in the form of imprisonment or fine. Though usually for crimes, penalties are also sometimes imposed for civil wrongs." Black's Law at 1153. The relevant definitions of "forfeiture" are "the divestiture of property without compensation" and "the loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." Black's Law at 681. These definitions all contemplate a punishment or taking grounded in a wrongful act.

within the plain meaning of fines, penalties, or forfeitures. Whichever approach is used, the outcome here is the same. It does not change the outcome that Jacob Milan would not have incurred the Incarceration Costs if he had not run afoul of the criminal justice system. Dakota County recognizes that penal sanctions are not discharged and accordingly asserts that the Incarceration Costs are penal.[20] There is, however, no credible support for the conclusion that the Incarceration Costs are penal.

Accordingly, the Incarceration Costs are not fines, penalties, or forfeitures within the meaning of § 523(a)(7). This determination alone compels the conclusion the Incarceration Costs are not excepted from discharge as all three prongs of 523(a)(7) must be satisfied to render them nondischargeable. As discussed below, however, the third prong is also unsatisfied.

*The Incarceration Costs compensate Dakota County for actual pecuniary loss.*

The third prong of § 523(a)(7) provides that a debt will not be discharged if it is not compensation for "actual pecuniary loss." 11 U.S.C. § 523(a)(7). The Court in *Kelly* concluded that even though a restitution obligation imposed as part of a court order may have been derived from the amount of damages suffered,

> "they are not assessed 'for … compensation' of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7)." *Kelly v. Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

Supporting its conclusion, the Court in *Kelly* noted that "[t]he victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353.

Dakota County relies on cases in which courts look past an obligation's compensatory nature to find the debt nondischargeable when the government articulates a penal purpose. These cases generally hold that if the government's interest in enforcing a debt is penal, or if its primary purpose is penal, it is irrelevant that injured persons or the government thereby receive compensation or reimbursement for their expenses. *See, e.g., U.S. Dept. of Housing & Urban Development v. Cost Control Marketing & Sales*, 64 F.3d 920, 927–928 (4th Cir.1995) (interpreting *Kelly*, 479 U.S. 36, 107 S.Ct. 353); *In re Kish*, 238 B.R. 271, 285 (Bankr.D.N.J.1999). In this case, the record demonstrates that the Incarceration Costs are not penal and that these costs are compensation for actual pecuniary loss.

First, the "pay to stay" program's only purpose is to compensate Minnesota counties for their expenses housing prisoners. Unlike in *Kelly*, there is no evidence of a rehabilitative or penal purpose for the "pay to stay" program. *Kelly* at 53, 107 S.Ct. 353. There is nothing in the statutory scheme evidencing an intent to impose "pay to stay" costs as a punishment. Nevertheless, Dakota County urges this court to conclude that "pay to stay" is penal. This court declines to read into Minn.Stat. § 641.12(3) a penal purpose which is not supported by any language of the statute

---

**20.** *See* Dakota County's Notice of Hearing and Motion for Summary Judgment (Doc. 12).

or the record. "Pay to stay" is a cost-shifting program to compensate Minnesota counties for the expense of housing inmates. Indeed, its statement of purpose says, "[t]he pay [to] stay policy is designed to assist Dakota County RECOUP A PORTION of the costs" of housing prisoners.[21] This statement encapsulates the title of the statute itself, "Collection of Fees and Board Bills", and the reference in the statute to the charges at issue as simply "costs." Moreover, the funds collected are paid directly to a DCSO account to cover its own housing costs. These costs are for actual pecuniary loss.

Second, the daily room and board charge assessed to convicted persons is derived solely from the actual cost incurred by Dakota County. Notwithstanding that Dakota County does not charge the full amount of its cost, the charge is derived from Dakota County's actual cost. Dakota County may not be seeking compensation in full, but it collects to recover pecuniary loss.

Moreover, Dakota County controls the amount it charges and whether the costs will even be assessed. *See* Minn.Stat. § 641.12(3)(a). In the *Kelly* case, the Supreme Court concluded that because a victim has no control over the amount of restitution or whether it will even be ordered, that such order is not for compensation of the victim but considers the broader penal interests of the State. *Kelly* at 52–53, 107 S.Ct. 353. This lack of control is frequently referenced in determining that a debt is nondischargeable. *See, e.g., U.S. v. Vetter,* 895 F.2d 456, 458–459 (8th

Cir.1990); *citing Kelly,* at 53, 107 S.Ct. 353. In this case, Dakota County retains complete control. The Incarceration Costs are based on compensation, not broad penal interests, and therefore do not support a determination of nondischargeability.

Third, the Incarceration Costs are best characterized as ordinary debts, not as punishment for any crime. Minn.Stat. § 641.12(3) refers to the Incarceration Costs as "charges" and "costs" and Dakota County approaches "pay to stay" charges as ordinary debts. In Dakota County, the consequence for failure to satisfy "pay to stay" assessments is referral to a civil revenue recapture program. This consequence is consistent with the limitations provided by this statute, that is, it provides that in collecting these "costs", "any available civil means of debt collection" may be used. Minn.Stat. § 641.12(3)(a). The non-payment of these "costs" will not result in probation revocation or other criminal consequences, a factor which has provided a basis for other courts to determine that a debt comes within the terms of § 523(a)(7). *See In re Thompson,* 16 F.3d 576, 580 (4th Cir.1994); *In re Hollis,* 810 F.2d 106, 108 (6th Cir.1987).

Fourth, Minn.Stat. § 641.12(3) is not a part of the criminal justice system of Minnesota. "[T]he interests of the States in unfettered administration of their criminal justice systems" are not at issue here. *Kelly,* 479 U.S. at 44, 107 S.Ct. 353. Dakota County is unaware of any instance when the District Court for the First Judicial District for Dakota County included "pay to stay" charges in a court order.[22] There

---

**21.** Joint Statement of Undisputed Material Facts, Pg. 2, paragraph 6 (Doc. 11); Pg. 104 of 132 (Doc. 10–1) (Dakota County Sheriff's Office Correctional Facility Policy and Procedure).

**22.** Jacob Milan's Sentencing Orders, apparently standardized forms used to memorialize

the terms of a judicial order, do not even feature an option to include "pay to stay" costs in the terms of the order. *See* Pgs. 92–98 of 132 (Doc. 10–1). Moreover, it appears that there is no authority to include "pay to stay" charges as part of a criminal sentence. *See* footnote 16, *supra.*

is no criminal punishment for failure to pay. The remedy is civil debt collection.

Moreover, Minn.Stat. § 641.12(3) empowers Minnesota counties, not Minnesota courts, to collect "pay to stay" costs from convicted persons. Here, it is Dakota County, through the DCSO that is administering and seeking to collect these costs. The costs upon collection are deposited in a DCSO budgetary account for use in covering its inmate costs. In contrast, court ordered costs (such as fines, surcharges, court costs, assessment fees, and restitution not for damages to the jail) are administered by the district court collector and upon collection are not deposited in the DCSO budgetary account. The DCSO does not administer court ordered costs and the district court collector does not administer "pay to stay" costs.

Finally, the Minnesota Legislature placed Minn.Stat. § 641.12(3) in the Minnesota administrative code, not the criminal code.[23] Minn.Stat. § 641.12(3) is not part of the criminal law at all, but rather empowers Minnesota counties to assess costs imposed against convicted persons. There is no support here for a determination that "pay to stay" costs are penal.

Accordingly, the Incarceration Costs are compensation for actual pecuniary loss within the meaning of § 523(a)(7). As such, they are dischargeable and were discharged.

### ORDER

Pursuant to the foregoing, IT IS ORDERED:

1. The Complaint is dismissed with respect to Defendant Ashley Kaye Milan (*aka* Ashley Kaye Hagen);

2. The Defendants' motion for summary judgment is granted;

3. The Plaintiff's motion for summary judgment is denied;

4. Jacob Milan's debt to the Plaintiff is dischargeable and not excepted from the Defendant's discharge;

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**23.** The Minnesota Criminal Code is found at    Minn.Stat. §§ 609.01–609.912.